**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave., 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
lrosen@rosenlegal.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WEICHEN LAI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PPDAI GROUP INC., JUN ZHANG, TIEZHENG LI, HONGHUI HU, SHAEFENG GU, RONALD CAO, CONGLIANG LI, NEIL NAPENG SHEN, ZEHUI LIU, QIONG WANG, SIMON TAK LEUNG HO, CREDIT SUISSE SECURITIES (USA) LLC., CITIGROUP GLOBAL MARKETS INC., and KEEFE, BRUYETTE & WOODS, INC.,<br><br>Defendants. | Case No: 1:18-cv-06716-FB-JO<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Weichen Lai ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by the PPDAI Group Inc. ("PPDAI" or the "Company"), as well as media and analyst

reports about the Company and Company press releases. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein.

## NATURE OF THE ACTION

1. Plaintiff brings this securities class action on behalf of persons who purchased or otherwise acquired PPDAI American Depositary Shares ("ADSs"): (1) pursuant or traceable to the F-1 registration statement, the F-6 registration statement, and related Prospectus (collectively, the "Registration Statement") issued in connection with PPDAI's initial public stock offering held on or about November 10, 2017 (the "IPO" or "Offering"), seeking to recover compensable damages caused by Defendants' violations of the Securities Act of 1933 (the "Securities Act"); and/or (2) between November 10, 2017 and December 1, 2017, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. PPDAI is an online Peer-to-Peer ("P2P") consumer finance platform, often termed "the Lending Club of China." PPDAI's propriety P2P platform connects borrowers to lenders offering short-term loans. PPDAI generates revenue primarily from fees charged to borrowers for PPDAI's services in matching borrowers with investors and for other services provided during the loan's lifecycle.

3. On or around November 10, 2017, Defendants conducted the IPO raising $221 million. Pursuant to the Registration Statement, Defendants issued approximately 17 million ADSs to the investing public at $13 per ADS.

4. On November 21, 2017, Chinese regulators issued a notice suspending the issuance of new online P2P licenses, citing improper and illegal practices by companies such as PPDAI.

5. On this news, PPDAI ADSs fell $4.38 per ADS or 34.87% to close at $8.18 per ADS on November 22, 2017.

6. On December 1, 2017, Chinese regulators, as set forth more fully below, issued an order aimed at prohibiting improper lending practices of online lenders such as PPDAI.

7. On this news, PPDAI ADSs fell $2.44 per ADS or over 25% to close at $7.16 per ADS on December 7, 2017.

8. The price of PPDAI's ADSs have sharply fallen since the Company's IPO. At the time this action commenced, PPDAI's ADSs closed at $6.19 per ADS, or over 52% below the Company's $13 IPO price. PPDAI ADSs closed at $3.89 per ADS as of January 7, 2019, representing a 70% decline from the IPO price. As a result, investors have been damaged.

## JURISDICTION AND VENUE

9. The claims alleged herein arise under and pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§77k, 771(a)(2) and 77o, and Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, Section 22 of the Securities Act (15 U.S.C. §77v), and Section 27 of the Exchange Act (15 U.S.C. §78aa).

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), Section 22(a) of the Securities Act (15 U.S.C. §77v(a)) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)) as a significant portion of Defendants' actions, and the subsequent damages took place within this District. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange. Defendants disseminated the statements alleged to be false and misleading herein into this District, and Defendants solicited purchasers of PPDAI ADSs in this District.

## PARTIES

12. Plaintiff, as set forth in Plaintiff's previously-filed PSLRA certification which is incorporated by reference herein, Dtk. No. 1-1, purchased PPDAI ADSs pursuant and/or traceable to the IPO and was damaged thereby.

13. Defendant PPDAI is an online P2P consumer finance company in China and the first online consumer finance marketplace in China connecting borrowers and investors whose needs are unserved or underserved by traditional financial institutions. PPDAI is a Cayman Islands corporation with principal executive offices located at Building G1, No. 999 Dangui Road, Pudong New District, Shanghai, PRC. PPDAI's ADSs are listed on the New York Stock Exchange ("NYSE") under the ticker symbol "PPDF."

14. Defendant Jun Zhang ("Zhang") was, at all relevant times, PPDAI's Chief Executive Officer, a co-founder of the Company, and the Chairman of PPDAI's Board of Directors. Defendant Zhang reviewed, contributed to, and signed the Registration Statement.

15. Defendant Simon Tak Leung Ho ("Ho") was, at all relevant times, PPDAI's Chief Financial Officer ("CFO"). Defendant Ho reviewed, contributed to, and signed the Registration Statement.

16. Defendants Zhang and Ho are sometimes collectively referred to herein as the "Exchange Act Individual Defendants."

17. Defendant Tiezheng Li ("T. Li") was, at all relevant times, PPDAI's Chief Strategy Officer, a co-founder of the Company, and a member of PPDAI's Board of Directors. Defendant T. Li reviewed, contributed to, and signed the Registration Statement.

18. Defendant Honghui Hu ("Hu") was, at all relevant times, PPDAI's President, a co-founder of the Company, and a member of PPDAI's Board of Directors. Defendant Hu reviewed, contributed to, and signed the Registration Statement.

19. Defendant Shaofeng Gu ("Gu") was, at all relevant times, a co-founder of the Company and a member of PPDAI's Board of Directors. Defendant Gu reviewed, contributed to, and signed the Registration Statement.

20. Defendant Ronald Cao ("Cao") was, at all relevant times, a member of PPDAI's Board of Directors. Defendant Cao reviewed, contributed to, and signed the Registration Statement.

21. Defendant Congliang Li ("C. Li") was a member of PPDAI's Board of Directors until December 2017. Defendant C. Li reviewed, contributed to, and signed the Registration Statement.

22. Defendant Neil Nanpeng Shen ("Shen") was, at all relevant times, a member of PPDAI's Board of Directors. Defendant Shen reviewed, contributed to, and signed the Registration Statement.

23. Defendant Zehui Liu ("Liu") was, at all relevant times, a member of PPDAI's Board of Directors. Defendant Liu reviewed, contributed to, and signed the Registration Statement.

24. Defendant Qiong Wang ("Wang") was a member of PPDAI's Board of Directors until December 2017. Defendant Wang reviewed, contributed to, and signed the Registration Statement.

25. Defendants Zhang and Ho (Exchange Act Individual Defendants), and T. Li, Hu, Gu, Cao, C. Li, Shen, Liu, and Wang are collectively referred to herein as the "Individual Defendants." The Individual Defendants each signed the Registration Statement, solicited the investing public to purchase securities issued pursuant thereto, hired and assisted the underwriters, planned and contributed to the IPO and Registration Statement, and attended road shows and other promotions to meet with and present favorable information to potential PPDAI investors, all motivated by their own and the Company's financial interests.

26. Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") is a financial services company that acted as an underwriter for PPDAI's IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase PPDAI securities issued pursuant thereto.

27. Defendant Citigroup Global Markets Inc. ("Citigroup") is a financial services company that acted as an underwriter for PPDAI's IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase PPDAI securities issued pursuant thereto.

28. Defendant Keefe, Bruyette & Woods, Inc. ("Keefe") is a financial services company that acted as an underwriter for PPDAI's IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase PPDAI securities issued pursuant thereto.

29. Defendants Credit Suisse, Citigroup, and Keefe are collectively referred to

herein as the "Underwriter Defendants." Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Registration Statement as follows:

(a) The Underwriter Defendants are investment banking houses that specialize in, among other things, underwriting public offerings of securities. They served as the underwriters of the IPO and shared tens of millions of dollars in fees collectively. The Underwriter Defendants arranged a multi-city roadshow prior to the IPO during which they, and representatives from PPDAI, met with potential investors and presented highly favorable information about the Company, its operations and its financial prospects.

(b) The Underwriter Defendants also demanded and obtained an agreement from PPDAI and the Individual Defendants that PPDAI would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws. They also made certain that PPDAI had purchased millions of dollars in directors' and officers' liability insurance.

(c) Representatives of the Underwriter Defendants also assisted PPDAI and the Individual Defendants in planning the IPO, and purportedly conducted an adequate and reasonable investigation into the business and operations of PPDAI, an undertaking known as a "due diligence" investigation. The due diligence investigation was required of the Underwriter Defendants in order to engage in the IPO. During the course of their "due diligence," the Underwriter Defendants had continual access to internal, confidential, current corporate information concerning PPDAI's most up-to-date operational and financial results and prospects.

(d) In addition to availing themselves of virtually unlimited access to internal corporate documents, agents of the Underwriter Defendants met with PPDAI's lawyers, management and top executives and engaged in "drafting sessions" between at least January

2017 and November 2017. During these sessions, understandings were reached as to: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which PPDAI ADSs would be sold; (iii) the language to be used in the Registration Statement; what disclosures about PPDAI would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration Statement. As a result of those constant contacts and communications between the Underwriter Defendants' representatives and PPDAI's management and top executives, the Underwriter Defendants knew of, or in the exercise of reasonable care should have known of, PPDAI's existing problems as detailed herein.

(e) The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with the offers and sales of securities registered thereby, including those to Plaintiff and the other members of the Class.

30. PDDAI, the Individual Defendants and the Underwriter Defendants are referred to collectively as "Defendants."

**Substantive Allegations**
**Materially False and Misleading**
**Statements Issued During the Class Period**

31. On January 20, 2017, PPDAI filed with the SEC a confidential draft registration statement on Form F-1, which, incorporating and in combination with related documents on Form F-6 and filed pursuant to Rule 424(b)(4), would be used for the IPO following a series of amendments in response to SEC comments, including comments from the SEC emphasizing the importance of adequately disclosing material trends and risk factors, as required by Items 303 and 503.

32. On November 6, 2017, PPDAI filed its final amendment to the Registration Statement. The SEC declared the Registration Statement effective on November 9, 2017. On

November 13, 2017, Defendants priced the IPO at $13 per ADS and filed the final Prospectus for the IPO, which formed part of the Registration Statement. Through the IPO and pursuant to the Registration Statement, Defendants issued and sold approximately 17 million ADSs.

33. The Registration Statement contained untrue statements of material fact and omitted to state material facts both required by governing regulations and necessary to make the statements made not misleading. The Registration Statement was replete with references to PPDAI's "rapid growth" trends across an array of financial and operational metrics. For example, the Registration Statement touted:

- "***rapid growth*** of [PPDAI's] user base and loan origination volume";
- "The amount of investments made on our platform has experienced ***rapid growth***";
- "The total outstanding balance of loans invested through our platform has experienced ***rapid growth***[.]"
- "***rapid growth*** in [PPDAI's] quarterly operating revenues for [] ten quarters";
- "***rapid growth*** of our business";
- "***rapid growth*** of [PPDAI's] operating revenues and the increased average rate of [] transaction fees."

(Emphasis added.)

34. The Registration Statement further claimed that this "rapid growth" translated into increasing profitability:

> We generate revenues primarily from fees charged to borrowers for our services in matching them with investors and for other services we provide over the loan lifecycle. ***We have experienced rapid growth*** in recent years. Our operating revenues grew from RMB197.4 million in 2015 to RMB1.2 billion (US$174.1 million) in 2016, and from RMB343.9 million in the six months ended June 30, 2016 to RMB1.7 billion (US$255.7 million) in the six months ended June 30, 2017. Substantially all of our operating revenues for these periods were attributable to fees charged to borrowers. We had a net profit of RMB501.5 million (US$72.2 million) in 2016, compared to a net loss of RMB72.1 million in

> 2015. ***Our net profit was RMB1,048.6 million (US$154.7 million) in the six months ended June 30, 2017, an increase from RMB41.9 million in the six months ended June 30, 2016.***
>
> * * *
>
> *Net Profit*. Our net profit for the nine months ended September 30, 2017 was RMB1,590.0 million (US$239.0 million), as compared to a net profit of RMB235.5 million for the nine months ended September 30, 2016. Our profitability improvement was primarily due to our overall expansion and growth.
>
> (Emphasis added.)

35. The Registration Statement also touted the following financial and operational trends:

> *Number of borrowers and investors*. As of September 30, 2017, we had over 9.0 million unique borrowers and 521,831 individual investors, respectively. The number of unique borrowers increased from over 2.3 million in the nine months ended September 30, 2016 to approximately 7.2 million in the nine months ended September 30, 2017, while the number of individual investors invested through our marketplace increased from 201,072 in the nine months ended September 30, 2016 to 267,442 in the nine months ended September 30, 2017. In the three months ended September 30, 2017, we had over 4.5 million unique borrowers.
>
> *Loan origination volume.* Our loan origination volume increased from approximately RMB12.4 billion for the nine months ended September 30, 2016 to RMB48.0 billion (US$7.2 billion) for the nine months ended September 30, 2017. Repeat borrowing volume was RMB32.4 billion (US$4.9 billion) for the nine months ended September 30, 2017, accounting for 67.4% of the total loan origination volume during the same period. Repeat borrowing volume was RMB14.1 billion (US$2.1 billion) for the three months ended September 30, 2017, account for 67.4% of the total loan origination volume during the same period. In the nine months ended September 30, 2017, the average loan size was RMB2,428 (US$358.1) with an average loan tenure of 7.8 months.

36. The Registration Statement further touted the purported quality of PPDAI's loan and borrowers, claiming that PPDAI "ha[d] ***established systematic risk management procedures which have proven to be effective***," that by "[l]everaging propriety algorithms, [PPDAI is] able to effectively match borrowers' loan requests with investors' investment demands," and that this "optimal user experience . . . contributes to [PPDAI's] ***high levels of borrower stickiness***." (Emphasis added.)

37. The Registration Statement further claimed the following purported competitive advantage:

> ***Highly effective risk management system proven through loan lifecycles.*** We have established systematic risk management procedures covering the entire loan lifecycle, from fraud detection, credit assessment and decision-making, risk pricing, to post-facilitation monitoring, repayment facilitation and loan collection. Throughout our operations in various macro-economic environments, our risk management system, which is being continuously upgraded and optimized, has proven to be effective at monitoring and controlling risks within our expected range.

(Emphasis added.)

38. The Registration Statement also purported to warm of numerous risks that, "***if***" occurring, "***may***" materially affect the Company. For example, the Registration Statement stated:

- "***It is possible*** that the PRC laws and regulations may change in ways that do not favor our development. If that happens, there may not be adequate loans facilitated on our platform and our current business model may be negatively affected."

- We are "***unable to predict*** with certainty ***the impact, if any, that future legislation, judicial interpretations or regulations*** relating to the online consumer finance industry will have on our business, financial condition and results of operations. ***To the extent that we are no able to fully comply*** with any new laws or regulations when they are promulgated, our business, financial condition and results of operations ***may be materially and adversely affected***."

39. The foregoing representations, reported financial results and trends, and purported risk disclosures, were false and misleading because:

a) PPDAI was engaged in predatory lending practices that burdened subprime borrowers and those with poor or limited credit histories with high interest rate debt they could not repay;

b) Many of PPDAI's customers were using PPDAI-provided loans to repay existing loans they otherwise could not afford to repay, thereby inflating the Company's revenues and active borrower numbers and increasing the likelihood of defaults;

c) PPDAI was experiencing increasing delinquency rates, which would negatively affect the Company's reserves;

d) PPDAI's purported "rapid growth" in the number and amount of loans had materially dropped off;

e) PPDAI was providing online loans to college students despite a government ban on the practice;

f) PPDAI was engaged in overly aggressive and improper collection practices; and

g) As a result of its improper lending, underwriting, and collection practices, PPDAI was subject to heightened risk of adverse action by Chinese regulators.

40. Defendants were required to disclose this material information in the Registration Statement for at least three reasons. First, SEC Regulation S-K, 17 C.F.R. §229.303 ("Item 303"), required disclosure of any known events or uncertainties that at the time of the IPO had caused or were reasonably likely to cause PPDAI's disclosed financial information not to be indicative of future operating results. The undisclosed materially negative events and trends were likely to (and in fact did) materially and adversely affect PPDAI's results and prospects and rendered the disclosed results and trends in the Registration Statement misleading and not indicative of PPDAI's future operating results.

41. Second, SEC Regulation S-K, 17 C.F.R. §229.503 ("Item 503"), required, in the "Risk Factor" section of the Registration Statement, a discussion of the most significant factors that make the offering risky or speculative and that each risk factor adequately describe the risk. PPDAI's discussion of risk factors did not even mention, much less adequately describe the risk posed by, its predatory lending practices, misleading active revenue and borrower reported results, increasing default risks, ongoing (yet prohibited) lending to college students, improper

collection practices, nor its consequently heightened exposure to adverse actions by Chinese regulators, nor the already occurring but undisclosed materially negative impact on PPDAI's results and trends, nor the likely and consequent materially adverse effects on the Company's future results, share price, and prospects.

42. Third, Defendants' failure to disclose PPDAI's predatory lending practices, misleading revenue, loan number and amount, and borrower reported results, increasing default risks, ongoing (yet prohibited) lending to college students, improper collection practices, consequently heightened exposure to adverse actions by Chinese regulators, and already occurring but undisclosed materially negative impact on PPDAI's results and trends, much less the likely material effects the foregoing would have on PPDAI's share price, rendered false and misleading the Registration Statement's many references to known risks that, "***if***" occurring, "***might***" or "***could***" affect the Company. These "risks" had already materialized at the time of the IPO.

## DISCLOSURES

43. Defendants went forward with the IPO with the foregoing misrepresentations and omissions in the Registration Statement. With these misrepresentations and omissions, the IPO was extremely lucrative for Defendants, who raised $221 million. But when the truth of Defendants' misrepresentations and omissions became known to the market, the price of PPDAI ADSs plummeted.

44. On November 21, 2017, Chinese regulators issued a notice suspending the issuance of new online P2P licenses, citing improper and illegal practices by companies such as PPDAI. These improper practices included high interest rates, illegal collections, and lack of risk management.

45. On this news, PPDAI ADSs fell $4.38 per ADS or 34.87% to close at $8.18 per ADS on November 22, 2017.

46. On December 1, 2017, Chinese regulators issued an order aimed at prohibiting improper practices of online lenders such as PPDAI. This order, among other things, limited intermediaries from charging upfront fees to borrowers or matching borrowers with funds from banking and financial institutions, instituted a 36% cap on annualized interest or fees charged on lending products, imposed stricter restrictions on aggressive collection practices, and put forth requirements for enhanced risk management.

47. On this news, PPDAI ADSs fell $2.44 per ADS or over 25% to close at $7.16 per ADS on December 7, 2017.

48. The price of PPDAI's ADSs have sharply fallen since the Company's IPO. When this action was commenced, PPDAI's ADSs closed at $6.19 per ADS, or over 52% below the Company's $13 IPO price.

49. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of PPDAI's ADSs, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

50. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired PPDAI ADSs: (1) pursuant and/or traceable to the Registration Statement, seeking to recover compensable damages caused by Defendants' violations of Sections 11, 12 and 15 of the Securities Act; and/or (2) between November 10, 2017 and December 1, 2017 inclusive, seeking to pursue remedies under Sections 10(b) and 20(a) of the Exchange Act (the "Class"). Excluded

from the Class are Defendants and their families, the officers and directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

51. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes there are thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by PPDAI or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

52. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

53. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

54. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a) whether Defendants violated the federal securities laws;

b) whether Defendants' statements to the investing public during the Class Period omitted and/or misrepresented material facts about the Company's business, operations, and prospects; and

c) to what extent the members of the Class have sustained damages and the proper measure of damages.

55. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

56. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- the Company's securities are traded in efficient markets;
- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on the NYSE, and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities;
- Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

- unexpected material news about the Company was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

57. Based upon the foregoing, Plaintiff and members of the Class are entitled to a presumption of reliance upon the integrity of the market.

58. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**COUNT I**
**Violations of Section 11 of the Securities Act**
**Against All Defendants**

59. Plaintiff repeats and re-alleges the foregoing contained above, except any allegation of fraud, recklessness or intentional misconduct.

60. This Count is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

61. The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

62. Defendants are strictly liable to Plaintiff and the Class for the misstatements and omissions.

63. None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

64. By reason of the conduct herein alleged, each Defendant violated or controlled a person who violated §11 of the Securities Act.

65. Plaintiff acquired PPDAI ADSs pursuant to the Registration Statement.

66. At the time of their purchases of PPDAI ADSs, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.

67. This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering. It is therefore timely.

**COUNT II**
**Violations of Section 12(a)(2) of the Securities Act**
**Against All Defendants**

68. Plaintiff repeats and re-alleges the foregoing contained above, except any allegation of fraud, recklessness or intentional misconduct.

69. By means of the defective Prospectus, Defendants promoted, solicited, and sold PPDAI ADSs to Plaintiff and other members of the Class.

70. The Prospectus for the IPO contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above. Defendants owed Plaintiff and the other members of the Class who purchased PPDAI ADSs pursuant to the Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.

Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Prospectus as set forth above.

71. Plaintiff did not know, nor in the exercise of reasonable diligence could Plaintiff have known, of the untruths and omissions contained in the Prospectus at the time Plaintiff acquired PPDAI ADSs.

72. By reason of the conduct alleged herein, Defendants violated §12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2). As a direct and proximate result of such violations, Plaintiff and the other members of the Class who purchased PPDAI ADSs pursuant to the Prospectus sustained substantial damages in connection with their purchases of the shares. Accordingly, Plaintiff and the other members of the Class who hold the ADSs issued pursuant to the Prospectus have the right to rescind and recover the consideration paid for their shares, and hereby tender their ADSs to Defendants sued herein. Class members who have sold their ADSs seek damages to the extent permitted by law.

73. This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering. It is therefore timely.

**COUNT III**
**Violations of Section 15 of the Securities Act**
**Against the Individual Defendants**

74. Plaintiff incorporates all the foregoing by reference, except any allegation of fraud, recklessness or intentional misconduct.

75. This cause of action is brought pursuant to §15 of the Securities Act, 15 U.S.C. §77o against the Individual Defendants.

76. The Individual Defendants were controlling persons of PPDAI by virtue of their positions as directors or senior officers of PPDAI. The Individual Defendants each had a series of direct and indirect business and personal relationships with other directors and officers and major shareholders of PPDAI. The Company controlled the Individual Defendants and all of PPDAI's employees.

77. PPDAI and the Individual Defendants were culpable participants in the violations of §§11 and 12(a)(2) of the Securities Act as alleged above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

78. This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering. It is therefore timely.

**COUNT IV**
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5**
**Against the Company and Exchange Act Individual Defendants**

79. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

80. This Count is asserted against the Company and the Exchange Act Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

81. During the Class Period, the Company and the Exchange Act Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that

they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

82. The Company and the Exchange Act Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

83. The Company and the Exchange Act Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

84. The Exchange Act Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to

ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

85. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Exchange Act Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of the Company's and the Exchange Act Individual Defendants' false and misleading statements.

86. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Exchange Act Individual Defendants' misleading statements and by the material adverse information which the Company's and the Exchange Act Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

87. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

88. By reason of the foregoing, the Company and the Exchange Act Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

**COUNT V**
**Violation of Section 20(a) of The Exchange Act**
**Against the Exchange Act Individual Defendants**

89. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

90. During the Class Period, the Exchange Act Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

91. As officers and/or directors of a publicly owned company, the Exchange Act Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

92. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Exchange Act Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Exchange Act Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

93. Each of the Exchange Act Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Exchange Act Individual Defendants had the power to direct the

actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Exchange Act Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

94. By reason of the above conduct, the Exchange Act Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for judgment and relief as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Awarding damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, together with interest thereon;

C. Awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D. Awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: January 8, 2019

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
lrosen@rosenlegal.com

*Counsel for Plaintiff*