**THE ROSEN LAW FIRM, P.A.**
Phillip Kim
Laurence M. Rosen
Yu Shi
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
lrosen@rosenlegal.com
yshi@rosenlegal.com

*Counsel for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WEICHEN LAI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PPDAI GROUP INC., JUN ZHANG, TIEZHENG LI, HONGHUI HU, SHAEFENG GU, RONALD CAO, CONGLIANG LI, NEIL NAPENG SHEN, ZEHUI LIU, QIONG WANG, SIMON TAK LEUNG HO, CREDIT SUISSE SECURITIES (USA) LLC., CITIGROUP GLOBAL MARKETS INC., and KEEFE, BRUYETTE & WOODS, INC.,<br><br>Defendants. | Case No: 1:18-cv-06716-FB-JO<br><br><u>CLASS ACTION</u><br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Lead Plaintiff Golden Section Holding Corporation and named plaintiff Weichen Lai, ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by Plaintiffs' undersigned attorneys, allege the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and upon information and belief as to all other matters based on the

investigation conducted by and through Plaintiffs' attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by PPDAI Group Inc. ("PPDAI" or the "Company"), wire and press releases published by and regarding the Company, securities analysts' reports, news stories, witness interviews, and the review of other publicly available information. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein.

## NATURE OF THE ACTION

1. This is a securities class action on behalf of all purchasers of PPDAI American Depositary Shares ("ADSs") from November 10, 2017 though through December 1, 2017, inclusive (the "Class", and the period from November 10, 2017 to December 1, 2017 is the "Class Period").[1] Plaintiffs bring the following claims on behalf of the Class: (1) Section 11 and Section 15 claims under the Securities Act of 1933 (the "Securities Act") for all purchasers of PPDAI ADSs pursuant or traceable to the Registration Statement (defined below in paragraph 4) in connection with PPDAI's initial public offering held on or about November 10, 2017 (the "IPO" or "Offering"); (2) Section 12(a)(2) and Section 15 claims under the Securities Act for all purchasers of PPDAI ADSs directly from the Underwriters (defined below in paragraph 34) at the Offering price in the IPO; and (2) Section 10(b) and Section 20(a) claims under the Securities Exchange Act of 1934 (the "Exchange Act") for all purchasers of PPDAI ADSs during the Class Period, except persons who purchased directly from the Underwriters at the Offering price in the IPO.

---

[1] Excluded from the Class are: (a) persons who suffered no compensable losses; and (b) Defendants; the present and former officers and directors of PPDAI at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which any of the Defendants, or any person excluded under this subsection (b), has or had a majority ownership interest at any time.

2. PPDAI offered and sold 17,000,000 ADSs to investors at $13 per ADS in its IPO. After deducting for fees and commissions, PPDAI reaped $205 million in proceeds from IPO investors.

3. PPDAI is a Cayman Islands company based in Shanghai, China. PPDAI is an online, peer-to-peer ("P2P") consumer finance marketplace that matches borrowers with lenders for short-term loans. PPDAI targets the segment of the Chinese population – mostly young people with limited credit histories – who do not qualify for loans with traditional financial institutions.

4. The registration statement and prospectus (both defined below in paragraph 48) issued to investors in connection with the IPO (collectively, the "Registration Statement") contained false and misleading statements of material fact and omitted material facts about PPDAI's business and practices.

5. First, the Registration Statement failed to disclose that PPDAI employed illegal and unethical tactics to collect overdue loans, including threatening borrowers, contacting their family members, friends, and even employers to humiliate and exert pressure on the borrower. One college student committed suicide due to constant harassment from PPDAI debt collectors.

6. Second, the Registration Statement failed to disclose that PPDAI, in violation of Chinese privacy laws, secretly downloads and then stores the contact lists of borrowers who use PPDAI's app. In the event that the borrower becomes delinquent in making his or her loan repayments, PPDAI then spams the individuals in the delinquent borrower's contact list with harassing phone calls and text messages in an effort to embarrass and humiliate borrowers in front of friends, family and employers in order to pressure borrowers to repay loans. This tactic is known in China as 爆通讯录, which translates literally to English as "contact list bombing."

7. Third, although Chinese laws have limited the all-in annual interest rate for private loans to no higher than 36% since 2015, the Registration Statement failed to disclose that PPDAI charged or attempted to charge borrowers illegal interest rates that pushed the annual interest up to more than 60%, sometimes even upwards of 700%.

8. Fourth, the Registration Statement failed to disclose that, even after the Chinese government banned P2P lending to college students after September 2017, PPDAI continued lending to college students in contravention of Chinese law.

9. The price of PPDAI's ADSs has fallen sharply since the Company's IPO. On November 26, 2018, the date on which this action was commenced, PPDAI's ADSs price closed at $6.19 per ADS, or over 52% below the Company's $13 IPO price, causing investors to lose more than a hundred million dollars.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under and pursuant to Sections 11, 12, and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l, and 77o), and Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. §78aa).

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)) because certain of the acts and conduct complained of herein, such as the trading of PPDAI ADSs on the New York Stock Exchange ("NYSE"), occurred in this District.

13. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, the Internet, and the facilities of the national securities markets.

## PARTIES

14. Lead Plaintiff Golden Section Holding Corporation ("Golden Section") purchased PPDAI ADSs in the IPO and during the Class Period and was damaged thereby. Golden Section purchased PPDAI ADSs directly from Defendant Credit Suisse Securities (USA) LLC at the Offering price in the IPO. Golden Section also purchased additional PPDAI shares on the NYSE pursuant and traceable to the Registration Statement during the Class Period. Golden Section's PSLRA certification was previously filed with the Court and is incorporated by reference herein. *See* ECF No. 8-2.

15. Named plaintiff Weichen Lai ("Lai") purchased PPDAI shares on the NYSE pursuant and traceable to the Registration Statement during the Class Period. Lai's PSLRA certification was previously filed with the Court and is incorporated by reference herein. *See* ECF No. 1-1.

16. Defendant PPDAI is a Cayman Islands company based in Shanghai, China. Its principal executive offices are located at Building G1, No. 999 Dangui Road, Pudong New District, Shanghai, People's Republic of China. PPDAI's ADSs are listed on the NYSE under the ticker symbol "PPDF."

17. Defendant Jun Zhang ("Zhang") is a co-founder of PPDAI, and was PPDAI's Chief Executive Officer ("CEO") and Chairman of PPDAI's Board of Directors at the time of the IPO and throughout the Class Period.

18. Defendant Simon Tak Leung Ho ("Ho") was PPDAI's Chief Financial Officer ("CFO") at the time of the IPO and throughout the Class Period.

19. Defendant Tiezheng Li ("T. Li") is a co-founder of PPDAI, and was PPDAI's Chief Strategy Officer and a member of PPDAI's Board of Directors at the time of the IPO.

20. Defendant Honghui Hu ("Hu") is a co-founder of PPDAI, and was PPDAI's President and a member of PPDAI's Board of Directors at the time of the IPO. Contemporaneous with the IPO, Defendant Hu became the controlling shareholder of PPDAI by way of his majority ownership of PPDAI's Class B shares.

21. Defendant Shaofeng Gu ("Gu") is co-founder of PPDAI, and was a member of PPDAI's Board of Directors at the time of the IPO.

22. Defendant Ronald Cao ("Cao") was a member of PPDAI's Board of Directors at the time of the IPO.

23. Defendant Congliang Li ("C. Li") was a member of PPDAI's Board of Directors until at the time of the IPO.

24. Defendant Neil Nanpeng Shen ("Shen") was a member of PPDAI's Board of Directors at the time of the IPO.

25. Defendant Zehui Liu ("Liu") was a member of PPDAI's Board of Directors at the time of the IPO.

26. Defendant Qiong Wang ("Wang") was a member of PPDAI's Board of Directors at the time of the IPO.

27. Defendants Zhang, Ho, T. Li, Hu, Gu, Cao, C. Li, Shen, Liu, and Wang are collectively referred to herein as the "Individual Defendants."

28. The Individual Defendants each reviewed and signed the Registration Statement.

29. The senior management of PPDAI, including defendants CEO Zhang and CFO Ho, as executive officers and authorized representatives of PPDAI, participated in the solicitation and sale of PPDAI ADSs to investors in the IPO, motivated in part to serve their own and the Company's financial interests

30. Defendants CEO Zhang and CFO Ho, along with other PPDAI senior executives, attended investor roadshow presentations and met with investment analysts and large investors in the weeks leading up to the IPO in an effort to persuade investors that PPDAI was a worthy investment and solicit investors to purchase ADSs in the IPO, all to further the financial interests of PPDAI, Zhang and Ho.

31. Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") served as an underwriter for the IPO and sold 9,486,000 ADSs for which it received certain fees and commissions. Credit Suisse has offices located at 11 Madison Avenue, New York, NY 10010.

32. Defendant Citigroup Global Markets Inc. ("Citigroup") served as an underwriter for the IPO and sold 6,324,000 ADSs for which it received certain fees and commissions. Citigroup has offices located at 388 Greenwich Street, New York, NY 10013.

33. Defendant Keefe, Bruyette & Woods, Inc. ("Keefe") served as an underwriter for the IPO and sold 1,190,000 ADSs for which it received certain fees and commissions. Keefe has offices located at 787 Seventh Avenue, New York, NY 10019.

34. Defendants Credit Suisse, Citigroup, and Keefe are collectively referred to herein as the "Underwriters."

35. PPDAI, the Individual Defendants, and the Underwriters are collectively referred to hereinafter as "Defendants."

36. The Underwriters participated in drafting the Registration Statement, caused the

Registration Statement to be filed with the SEC and to be declared effective in connection with the IPO, and participated in the dissemination of the Registration Statement. However, the Underwriters failed to perform adequate due diligence in connection with their role as underwriters for the IPO and were negligent in failing to ensure that the Registration Statement was prepared properly and accurately, free of misstatements or omissions.

37. In addition, the Underwriters met with potential investors and presented highly favorable but incorrect and/or misleading information about the Company, its business, products, plans, and financial prospects, and/or omitted to disclose material information required to be disclosed under the federal securities laws and applicable regulations promulgated thereunder.

38. Representatives of the Underwriters also assisted the Company and the Individual Defendants in planning the IPO. They also purported to conduct an adequate and reasonable investigation into the business, operations, products, and plans of the Company, an undertaking known as a "due diligence" investigation. During the course of their due diligence, the Underwriters had access to confidential corporate information concerning the Company's business, financial condition, products, plans, and prospects.

39. In addition to having access to internal corporate documents, the Underwriters and/or their agents, including their counsel, had access to the Company's lawyers, management, directors, and top executives to determine: (1) the strategy to best accomplish the Offering; (2) the terms of the Offering, including the price at which the Company's ADSs would be sold; (3) the language to be used in the Registration Statement; (4) what disclosures about the Company would be made in the Registration Statement; and (5) what responses would be made to the SEC in connection with its review of the Registration Statement. As a result of those contacts and communications between the Underwriters' representatives and the Company's management and

top executives, the Underwriters were, at a minimum, negligent in allowing dissemination of the material misstatements and omissions contained in the Registration Statement as detailed herein.

40. The Underwriters' negligence and failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein and, pursuant to the Securities Act, they are liable for the materially false and misleading statements in the Registration Statement.

## WITNESSES

41. Plaintiffs' investigators spoke with former employees ("FE") of PPDAI who have personal knowledge of the facts alleged in this Complaint.

42. FE1 worked for PPDAI's principal operating subsidiary, Shanghai PPDAI Financial Information Services Co. Ltd. ("Shanghai PPDAI"), as a Regional Manager from June 2016 to October 2018. He helped to oversee all aspects of Shanghai PPDAI's operations, including credit assessment of borrowers, repayment facilitation, and loan collection.

43. FE2 worked as a Risk Management Specialist in the Risk Management department of Shanghai PPDAI from September 2016 to January 2017. FE2 was primarily responsible for debt collection from borrowers with past-due balances.

44. FE3 worked as a Credit Assessment analyst in the Credit Assessment department of Shanghai PPDAI from July 2017 to November 2018. FE3's duties included reviewing the qualifications of potential borrowers on PPDAI's platform.

## MATERIALLY FALSE AND MISLEADING STATEMENTS IN THE REGISTRATION STATEMENT

### PPDAI: Company Background

45. PPDAI operates a P2P platform that matches borrowers with lenders for various types of short-term loans. Users can access PPDAI's platform either via a mobile application

(“app”) on their smartphone or through the web using a PC device. PPDAI’s business is modeled on the well-known, U.S.-based P2P lending platforms such as LendingClub and Prosper Marketplace.

46. PPDAI targets the vulnerable segment of the Chinese population whose lack of, or limited, credit histories make them ineligible for loans with traditional financial institutions, such as banks.

47. PPDAI generates revenue primarily through the fees that it charges to borrowers, including loan origination fees and delinquency charges.

**The Registration Statement**

48. On October 13, 2017, PPDAI filed with the SEC a registration statement on Form F-1 for the IPO. Following multiple amendments on Form F-1/A, the last of which was filed on November 6, 2017, PPDAI’s registration statement was declared effective by the SEC on November 9, 2017 (the Form F-1, together with all amendments, is referred to herein as the “registration statement”). Subsequently, on November 13, 2017, PPDAI filed the final prospectus for the IPO (“prospectus”), which forms part of the registration statement (the prospectus and registration statement are collectively referred to herein as the “Registration Statement”).

49. The Registration Statement contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading, and failed to make adequate disclosures required under the rules and regulations governing the preparation of such documents.

50. The Registration Statement stated that PPDAI had experienced rapid growth in revenues, net income and active users in the years leading up to the IPO, but failed to disclose that this growth had been fueled by illegal lending, underwriting, and collection practices.

51. The Registration Statement represented to investors that PPDAI had "taken measures to comply with the laws and regulations that are applicable to our business operations." As detailed herein, this was false.

52. The Registration Statement also purported to warm of numerous risks that, "***if***" occurring, "***may***" or "***would***" materially affect the Company. For example, the Registration Statement stated:

- "***If*** our practice is deemed to violate any PRC laws and regulations, our business, financial condition and results of operations would be materially and adversely affected"

- "***If*** [PPDAI's] collection methods are viewed by the borrowers or regulatory authorities as harassments, threats or other illegal conducts, ***we may be subject*** to lawsuits initiated by the borrowers or prohibited by the regulatory authorities from using certain collection methods. ***If this were to happen*** and we fail to adopt alternative collection methods in a timely manner or the alternative collection methods are proven not effective, ***we might not be able to maintain our delinquent loan collection rate*** and the investors' confidence in our platform may be negatively affected."

53. These warnings were misleading because they warn of the ***possibility*** that PPDAI may be found to be violating Chinese laws and regulations and engaging in illegal collections practices, when PPDAI was ***actually violating*** PRC laws and regulations, and ***actually engaging*** in illegal collections practices. Coupled with PPDAI's representation that PPDAI had taken measures to ensure its business practices complied with Chinese law, these warning gave investors the misleading impression that PPDAI was not aware of any of its practices that were in current violation of PRC law.

**Illegal Collection Practices**

54. While the Registration Statement states that PPDAI will send text message reminders and make telephone calls to delinquent borrowers, it did not disclose that PPDAI's standard collection practices included utilizing abusive language, slander, public humiliation, and threatening serious financial and social harm to pressure borrowers to repay loans. These tactics violated Chinese law.[2]

55. An article titled "PPDAI Actual Annual Interest Rates Reach 708%, Abusive Collection Practices Unabated", dated December 15, 2017 and appearing on Tencent Finance (the "Tencent Finance Article"),[3] published screenshots of threatening text messages that delinquent borrowers received from PPDAI.

56. The Tencent Finance Article reported that PPDAI commonly engaged in abusive and threatening collection practices. A 30 year-old man from Guizhou, China who identified himself as Mr. Liu said that he started receiving threatening text messages from PPDAI when his loans became one-week overdue. The Tencent Finance Article published the following text messages that PPDAI sent to Mr. Liu:

[2] *E.g. Law of the People's Republic of China on Penalties for Administration of Public Security*; *Criminal Law of the People's Republic of China.*
[3] http://money.qq.com/a/20171215/023902.htm




57. The text message from PPDAI to Mr. Liu states: "Hello, we at PPDAI loaned you money during your most needy period because of your good credit, and helped you get through your difficult time, correct? If you pay back your loans on time we will not charge you anything extra. Now you're severely overdue, and we've contacted you many times to no avail. Don't let your beautiful life be ruined over this little bit of money. Your parents still rely on you for support. Your family still needs you. Now your bank account has been blacklisted. You want

to make this matter worse? However much money you have now, repay that amount first to get rid of your overdue balance. You really want this to be handed to a lawyer before you will take care of it?"

58. Another text message from PPDAI to Mr. Liu stated this:




(Translation: "If you don't pay back your loans your personal pictures will be sent to your entire contact list. If you continue to ignore us, we will put your pictures all over

the internet, and you won't be able to borrow money from anywhere else. Contact me if you want to pay back your loan. I'll help you reduce the interest rate.")

59. The Tencent Finance Article also told the story of a 22 year-old man named Luo. Luo used PPDAI to borrow RMB 2700 to buy a cell phone. After the balance became a few days overdue, PPDAI spammed his entire contact list, and called his mother every day to threaten her. Luo further stated that PPDAI used different numbers to send him threatening and abusive text messages, and even downloaded his pictures from social media and created embarrassing images with captions to send to people in his contact list, with one image edited and captioned to say that because Luo's in debt he decided to become a prostitute.

60. Another user posted on PPDAI's discussion board saying that after her loan became past due, she started receiving threatening calls from PPDAI, including a call telling her that "her son will no longer be able to go to school" if she doesn't pay back her loan.[4]

61. An article titled "PPDAI Reveals Users' Private Information, Loan Collector Insults and Threatens Borrowers' Contact Person,"[5] which appeared on a Chinese financial news website on January 4, 2018, stated that in December 2017, a man named Wang Bing started receiving threatening calls from PPDAI. Turns out Wang Bing's friend, Li Yuan, had used Wang Bing's number as his contact number on his PPDAI application. When Li Yuan's loans became delinquent, PPDAI started calling and threatening Wang Bing. PPDAI then doctored a picture of Wang Bing with the caption "Hello everybody, this person's mother is a prostitute and contracted a STD, please donate some money to help with his mother's medical expenses." This was sent to everyone on Wang Bing's contact list.

---

[4] https://group.ppdai.com/forum.php?mod=viewthread&tid=880853
[5] https://www.huiyep.com/p2p/157098.html

62. Another PPDAI borrower posted on a public forum that after his PPDAI loans became delinquent, PPDAI spammed his entire contact list, causing him to lose his job as a result.[6]

63. Among China's P2P lending companies, PPDAI is the worst offender when it comes to illegal collections practices. P2PEYE, a Chinese news media that focuses on the P2P industry, analyzed complaints against P2P lenders that appeared on 聚投诉 ("Complaint Database"),[7] a Chinese website that allows consumers to make complaints against companies and for the companies to respond to the complaints, and found that PPDAI had by far the most complaints of illegal collection practices out of all P2P lenders in China during the period from March 2017 to March 2018:

| 暴力催收 | |
|---|---|
| 平台名称 | 投诉信息条数 |
| 拍拍贷 | 1372条 |
| 你我贷 | 340条 |
| 宜人贷 | 81条 |
| 微贷网 | 83条 |
| 爱钱进 | 42条 |
| 点融网 | 56条 |
| 人人贷 | 19条 |
| 翼龙贷 | 2条 |
| PPmoney | 1条 |
| 积木盒子 | 1条 |

[6] http://www.rprt.net/read/0-c7-b7-c5-c4-c5-c4-b4-fb-c7-ae-a1-a3-cb-fb-c3-c7-b1-ac-ce-d2-cd-a8-d1-b6-c2-bc-a3-ac-d2-d4-bc-b0-c0-fb-d3-c3-b1-a9-c1-a6-b4-df-ca-d5.html

[7] 聚投诉 ("Complaint Database") is a popular public complaints database in China. Its purpose is similar to the BBB in the United States – a non-governmental entity where consumers can make complaints against companies and the companies are given the opportunity to respond and resolve those complaints.

This chart shows that PPDAI had 1,372 complaints of illegal collection practices from March 2017 to March 2018, dwarfing the next company on the list, which had 340.[8]

64. According to P2PEYE's analysis of the complaints against PPDAI, the most frequently alleged illegal collection practice is PPDAI's harassing the borrower's family and friends, followed by: PPDAI collections personnel pretending to be law enforcement, or editing the borrower's pictures into pornography and posting them online.

65. FE1, the Shanghai PPDAI Regional Manager, confirmed to Plaintiffs' investigator that PPDAI employed very aggressive collection tactics, including "contact list bombing" (*i.e.* contacting borrowers' family and friends and threatening them with numerous text messages and phone calls, or sending embarrassing content about the borrower to his/her entire contact list). FE1 told Plaintiffs' investigator that the online complaints against PPDAI's illegal collection practices described above are almost all true. FE1 said that debt collection was primarily carried out with threats.

66. FE3 told Plaintiffs' investigator that these collections tactics were "necessary" because if the collections tactics were "soft" then they may not be effective.

67. FE2 also confirmed that Plaintiffs' investigator that PPDAI would obtain contact lists and make harassing calls to family, friends, employers, etc. of borrowers with delinquent balances.

**Illegal Collection and Use of Users' Private Information**

68. PPDAI was able to engage in these illegal collection tactics – contacting delinquent borrowers' family, friends, employers; sending embarrassing pictures to a borrower's entire contact list, etc. – because it had a practice of illegally obtaining, storing (and then

---

[8] https://news.p2peye.com/article-512060-1.html

abusing) borrowers' contact lists, in violation of relevant Chinese consumer data privacy laws. This was not disclosed in the Registration Statement.

69. In December 2011, the Chinese government promulgated the *Several Provisions on Regulating the Market Order of Internet Information Services* (the "December 2011 Provisions"). According to the December 2011 Provisions, online P2P platform providers such as PPDAI: (1) may not collect any user personal information without consent of the user; (2) must expressly inform users of the method, content and purpose of the collection and processing of such user's personal information and may only collect such information necessary for the provision of its services.

70. In addition, the Chinese government issued the *Decision on Strengthening the Protection of Online Information* in December 2012 and *Order for the Protection of Telecommunication and Internet User Personal Information* in December 2013. These laws reiterated that any collection and use of user personal information must be subject to the express consent of the user, and that such collection and use of personal information must be for legal purposes.

71. The Registration Statement references each of these regulations and states that PPDAI was subject to them. But the Registration Statement fails to disclose that PPDAI was violating these regulations.

72. PPDAI uses several methods to illegally harvest a borrower's contact list. For example, when a borrower installs the PPDAI app on a smartphone, the app would seek permission from the borrower to "access" the borrower's contact list during the installation process. Once the borrower gives the PPDAI app permission to access the phone's contact list (including name, phone number, email address, etc.), then PPDAI secretly downloads the entire

list, and then secretly uploads it onto PPDAI's cloud server, where it is stored without the user's knowledge.

73. More than 90% of PPDAI's borrowers use PPDAI's mobile app, according to the Registration Statement. Hence most borrowers are susceptible to having their contact list harvested by PPDAI.

74. FE1 told Plaintiffs' investigator that PPDAI had more than one method to secretly harvest a borrower's contact list, and that it's all done in-house by PPDAI staff. Once the contact lists are obtained, then PPDAI would store the contact lists on their cloud server, and use them for "contact list bombing" when the borrower becomes delinquent in making payments.

**Illegal Loans to College Students**

75. PPDAI started its business targeting what it described as "the young generation that is typically more receptive to internet financial services and is poised to become the major driving force of China's consumer financial." At the time, the Chinese government prohibited banks from issuing credit cards to college students out of concern over college students' inability to pay off credit card debts. PPDAI stepped into this void by offering short-term loans to Chinese college students whose demand for consumer products, particularly computers, cell phones and luxury items, was growing rapidly, and no other credit products were available to them.

76. PPDAI even designed a loan that was marketed specifically to college students, called 莘莘学子 ("Shen Shen Xuezi"). To qualify for PPDAI's Shen Shen Xuezi loan, an applicant must be under 25 and must provide a student ID.

77. With P2P lenders like PPDAI growing on China's college campuses, increasing numbers of young college students were lured into overspending and were overburdened from

easy credit and usurious loans. Alerted to this mounting problem, the Chinese Banking Industry Regulatory Commission issued a *Guiding Opinion on Banking Industry's Risk Control Work* on April 10, 2017, prohibiting internet financing companies from issuing loans to college students younger than 18 year old. On June 18, 2017, The Chinese Banking Industry Regulatory Commission, Ministry of Education and Ministry of Human Resources and Social Security together issued a *Notice regarding Further Strengthening the Regulating Work on Loans on Campuses*, suspending all internet financing companies' lending businesses on campuses and demanding those companies phase out existing on-campus lending businesses. On September 6, 2017, the Ministry of Education held a press conference at which it expressly stated that "campus lending is forbidden; no internet financing institutions shall issue loans to college students."[9]

78. In response to these regulations, PPDAI ended the Shen Shen Xuezi loan designed specifically for college students, but PPDAI never stopped issuing loans to college students - they merely became like any other borrower on PPDAI.

79. FE1 told Plaintiffs' investigator that even after the Chinese government banned P2P platforms from issuing loans to college students, this practice was never banned at PPDAI during FE1's tenure at the Company.

80. Indeed, PPDAI did not institute any means to filter out college students from its borrower base. Plaintiffs' investigator asked FE3, a credit assessor at PPDAI, whether there were any internal guidelines at PPDAI to make sure that loans were not issued to college students. FE3 could not come up with any.

81. Thus, PPDAI's platform continued loaning to college students after the Chinese government's ban on this practice, sometimes with tragic consequences.

---

[9] http://m.news.cctv.com/2017/09/06/ARTIpYZAqcD8S7bOY4RSMqDu170906.shtml

82. On June 4, 2018, an article appeared on Tencent News reporting the suicide of a college student from Xian, China.[10] According to the article, the student, identified as Xiao Sheng, was set to graduate from a Xian college in July 2018. He disappeared on May 12, 2018. On May 17, 2018, his body was found. Officials determined that the cause of death was suicide.

83. Xiao Sheng's cell phone was returned to the family following his death. In the days after his suicide, PPDAI – unaware that Xiao Sheng had committed suicide – sent daily text messages to Xiao Sheng's phone seeking to collect on past due loans. Xiao Sheng's parents believe that the constant harassment from P2P lenders, including PPDAI, led to their son's suicide.

84. The Complaint Database is also replete with complaints from students concerning PPDAI's loan practices:

a. A complaint dated December 30, 2018 under the heading "PPDAI issued high interest loans to student and I can no longer afford to repay the debt" stated that the borrower was a 19 year-old student who borrowed RMB 4000 from PPDAI in August 2018. The complaint included screenshots of the loan details from PPDAI as well as a screenshot of the borrower's student ID. The borrower wondered why PPDAI issued him the loan given that the government had prohibited P2P lenders from issuing loans to students.[11]

b. Another complaint dated December 20, 2018 stated that "PPDAI duped the customer and issued loans to college students with high interest rates and processing fees."[12] PPDAI responded to the complaint with a self-serving denial that it issued any

[10] https://new.qq.com/omn/20180604/20180604A1DJLK.html
[11] https://ts.21cn.com/tousu/show/id/610921
[12] https://ts.21cn.com/tousu/show/id/612133

loans to college students, and closed the case. The student then filed a new complaint on Complaint Database, accusing PPDAI of closing the case before resolution.[13]

**Illegal Interest Rates**

85. According to the *Provisions on Several Issues Concerning Laws Applicable to Trials of Private Lending Cases issued by the Supreme People's Court of the PRC* issued on August 6, 2015, effective on September 1, 2015, and the *Private Lending Judicial Interpretations*, which came into effect on September 1, 2015, if the effective all-in annual interest rate of a private loan is higher than 36%, the excess will be void and will not be enforced by the courts.

86. PPDAI represented in the Registration Statement that in compliance with applicable laws and regulations, "the interest rates of all our loan products are below 36%".

87. In truth, the annual interest rates of PPDAI's loan products routinely went above 36% after various hidden fees and through delinquency charges.

88. According to the Tencent Finance Article, several borrowers expressed dismay that based on PPDAI's repayment schedule, they would be subjected to annualized interest rates up to 708%.

89. In an article that appeared on the Chinese news media Economic View, dated January 10, 2019, a man identified by the surname Geng told the Economic View that he borrowed RMB 5000 from PPDAI in May 2018. He timely completed his repayment in 9 monthly installments. However, his total repayment added up to RMB 6349.71, representing an annual interest rate of 60.79% - far above the 36% maximum allowed under Chinese law.

[13] https://ts.21cn.com/tousu/show/id/636649

90. In an online post dated March 25, 2019, a PPDAI borrower indicated (with screenshots of his PPDAI payment schedule page) that he borrowed RMB 1000 from PPDAI with a six-month repayment schedule, but because he was ***one day*** late on his third installment payment, his total repayment amount became RMB 1362.60, representing an illegal effective annual interest rate of 36.26% - for being one day late.[14]

91. FE3 claimed to Plaintiffs' investigator that to the best of FE3's knowledge, PPDAI kept its ordinary interest rates under 36%, sometimes reaching 35.9%. But FE3 admitted that after delinquency charges and delinquency interest rates, the overall interest rate may exceed the allowable limit.

## ITEMS 303 AND 503 OF SEC REGULATION S-K

92. Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303(a)(3)(ii), requires defendants to "[d]escribe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on the sales or revenues or income from continuing operations."

93. Similarly, Item 503 of SEC Regulation S-K, 17 C.F.R. §229.503, requires, in the "Risk Factor" section of registration statements and prospectuses, "a discussion of the most significant factors that make the offering speculative or risky" and requires each risk factor to "adequately describe[] the risk."

94. The failure of the Registration Statement to disclose the facts listed in ¶¶ 54-91 violated 17 C.F.R. §229.303(a)(3)(ii), because these undisclosed facts would (and did) have an unfavorable impact on the Company's sales, revenues and income from continuing operations. This failure also violated 17 C.F.R. §229.503, because these specific risks were not adequately

[14] https://tousu.sina.com.cn/complaint/view/17347345869/

disclosed, or disclosed at all, even though they were some of the most significant factors that made an investment in PPDAI ADSs speculative or risky.

95. For example, it was important and material for investors to know that PPDAI's revenue depended, in part, on issuing illegal loans to college students and charging illegal interest rates. It was also important and material to investors that PPDAI's collection practice relied on illegally harvesting borrowers' contact lists and then engaging in illegal tactics to pressure delinquent borrowers. Compliance with the law on these areas would cause PPDAI's revenue and income to be negatively affected, while continued violation of these laws means that PPDAI would be especially vulnerable to civil or criminal penalties.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

96. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all persons or entities that purchased PPDAI ADSs from November 10, 2017 though through December 1, 2017, inclusive.[15]

97. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe there are thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by PPDAI or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

---

[15] Excluded from the Class are: (a) persons who suffered no compensable losses; and (b) Defendants; the present and former officers and directors of PPDAI at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which any of the Defendants, or any person excluded under this subsection (b), has or had a majority ownership interest at any time.

98. Plaintiffs' claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

99. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

100. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a) whether Defendants violated the federal securities laws;

b) whether the Registration Statement omitted and/or misrepresented material facts about the Company's business, operations, and prospects; and

c) to what extent the members of the Class have sustained damages and the proper measure of damages.

101. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I
## Violations of Section 11 of the Securities Act
## Against All Defendants

102. Plaintiffs repeat and re-allege the foregoing contained above, except any allegation of fraud, recklessness or intentional misconduct.

103. This Count is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

104. The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

105. The Defendants named in this Count were responsible for the contents and dissemination of the Registration Statement; signed the Registration Statement; and/or were directors, underwriters or selling stockholders who are appropriate defendants in this Count.

106. Defendants are strictly liable to Plaintiffs and the Class for the misstatements and omissions in the Registration Statement.

107. None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

108. The Underwriters owed to the holders of the ADS acquired through the Registration Statement the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement at the time they became effective to ensure that such statements were true and correct and that there was no omission of material facts required to be stated in order to make the statements contained therein not misleading.

109. Plaintiffs acquired PPDAI ADSs pursuant to the Registration Statement.

110. At the time of their purchases of PPDAI ADSs, Plaintiffs and members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.

111. This claim is brought within one year after discovery of the untrue statements and/or omissions in the Registration Statement that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Registration Statement. It is therefore timely.

**COUNT II**
**Violations of Section 12(a)(2) of the Securities Act**
**Against All Defendants**

112. Plaintiffs repeat and re-allege the foregoing contained above, except any allegation of fraud, recklessness or intentional misconduct.

113. By means of the defective prospectus, Defendants promoted and sold PPDAI ADSs to Plaintiffs and other members of the Class. Defendants actively solicited purchasers of PPDAI ADSs for the IPO by, among other things, preparing, disseminating and presenting to potential investors and otherwise eliciting investor participation in the IPO. As a result, Defendants were "statutory sellers" for the purposes of Section 12(a)(2) of the Securities Act. Additionally, PPDAI was a statutory seller under SEC Rule 159A, which provides that an issuer is a statutory seller for the purposes of Section 12(a)(2) regardless of the form of underwriting.

114. The prospectus for the IPO contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above. Defendants owed Plaintiffs and members of the Class who purchased PPDAI ADSs pursuant to the prospectus the duty to make a reasonable and diligent investigation of the statements contained in the prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the prospectus as set forth above.

115. Plaintiffs did not know, nor in the exercise of reasonable diligence could Plaintiffs have known, of the untruths and omissions contained in the prospectus at the time Plaintiffs acquired PPDAI ADSs.

116. By reason of the conduct alleged herein, Defendants violated §12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2). As a direct and proximate result of such violations, Plaintiffs and members of the Class who purchased PPDAI ADSs pursuant to the prospectus sustained substantial damages in connection with their purchases of the shares.

117. Accordingly, Plaintiffs and members of the Class who hold the ADSs issued pursuant to the prospectus have the right to rescind and recover the consideration paid for their shares, and hereby tender their ADSs to Defendants sued herein. Class members who have sold their ADSs seek damages to the extent permitted by law.

118. This claim is brought within one year after discovery of the untrue statements and/or omissions in the prospectus that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the prospectus. It is therefore timely.

## COUNT III
## Violations of Section 15 of the Securities Act
## Against the Individual Defendants

119. Plaintiffs incorporate all the foregoing by reference, except any allegation of fraud, recklessness or intentional misconduct.

120. This cause of action is brought pursuant to §15 of the Securities Act, 15 U.S.C. §77o against the Individual Defendants, each of whom was a control person of PPDAI during the relevant period.

121. The Individual Defendants were in positions to control and did control, the false and misleading statements and omissions contained in the Registration Statement.

122. None of the Individual Defendants made reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were accurate and complete in all material respects. Had they exercised reasonable care, they would have known of the material misstatements and omissions alleged herein.

123. Plaintiffs and the Class have sustained damages. The value of PPDAI ADSs has declined substantially due to the Securities Act violations alleged herein.

124. This claim is brought within one year after discovery of the untrue statements and/or omissions in the Registration Statement that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Registration Statement. It is therefore timely.

## EXCHANGE ACT CLAIMS

**Allegations Supporting Inference of Scienter**

125. After the Chinese government banned loans to college students, PPDAI stopped offering its students-only Shen Shen Xuezi loan in a superficial show of compliance. Stopping an entire product line could not have happened without the knowledge of CEO Zhang and CFO Ho. Yet, PPDAI instituted no measures to prevent loans from being issued to students elsewhere on its platform. It is not possible that PPDAI, and Defendants Zhang and Ho, believed that students would stop using PPDAI just because Shen Shen Xuezi was no longer available, when PPDAI continued to offer other loans to college students on its platforms.

126. The practice of "contact list bombing" is an elaborate process that could not have been the works of rogue employees. First, PPDAI needed to secretly download a borrower's contact list, then it needed to secretly upload the contact list and store it on a cloud server, to be

used when a borrower became delinquent. This is indicative of a well thought-out scheme that could not have happened without the knowledge of CEO Zhang and CFO Ho.

127. A month before the IPO, on October 22-24, 2017, a series of articles appeared in the Chinese media about Qudian Inc., another Chinese P2P lending platform, reporting that Qudian engaged in abusive collections practices, issued illegal loans to college students, and charged illegal interest rates.[16] Given that one of its main competitors was accused of such practices, it is inconceivable that PPDAI did not examine its own policies and practices with regards to these areas.

128. As CFO, Defendant Ho could not have been oblivious to the interest rates that PPDAI charged. Nor could the interest rates on delinquent borrowers have been set without the knowledge of Defendants Zhang and Ho. On a December 13, 2017 conference call with analysts to discuss Q3 2017 earnings, Defendant Ho made it clear that he was involved in setting interest rates at PPDAI, saying that "As investors know, recently issued government regulatory policy changes have placed a 36% cap on total annualized borrowing cost. We fully embrace and endorse this new regulatory measure and have adjusted our lending products to meet this 36% cap requirement."

**The Chinese Government Cracks Down on Illegal Lending Practices, Devastating PPDAI ADSs**

129. On December 1, 2017, less than a month after PPDAI's IPO, the Chinese government cracked down on PPDAI and the P2P lending industry. The Internet Finance Rectification Office and the Online Lending Rectification Office of the People's Republic of China issued the *Notice on Regulating and Rectifying "Cash Loan" Business* (the "Notice").

---

[16] *See, e.g.*, https://www.wdzj.com/zhuanlan/guancha/17-5662-1.html

130. The Notice highlighted the illegal practices that PPDAI was engaged in, including the illegal practices alleged in this Complaint. In the preamble, the Notice states: "Problems such as excessive lending, repeated credit granting, aggressive collection, extremely high interest rate and invasion of personal privacy are rampant, and they may bring great financial risks and social risks."

131. The Notice, then, for the first time, aggregated the various laws and regulations governing P2P lenders into one piece of legislation. The Notice, in one document, spelled out the ban in abusive collections practices, loans to students, illegal interest rates, and misuse of customer's data.

132. The Notice also for the first required that P2P lenders abide by the "Know Your Customer" principle, prohibiting loans to anyone who cannot document a source of income to repay the loans.

133. The Notice provides for several levels of punishment for companies that violate it provisions, from suspension of business license to criminal prosecution.

134. The Notice brought to the forefront of public attention the illegal acts that P2P lenders such as PPDAI were engaged in, and demonstrated that the Chinese government was prepared to increase its scrutiny over this industry.

135. PPDAI ADSs' price, which closed at $9.60 per ADS on November 30, 2017, fell by $1.19, or over 13%, over the next two trading days to close at $8.34 per ADS on December 4, 2017.

**<u>*Respondeat Superior* and Liability under Section 20 of the Exchange Act</u>**

136. PPDAI is liable for the acts of Zhang and Ho and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

137. The scienter of Zhang and Ho and other employees and agents of the Company is similarly imputed to PPDAI under *respondeat superior* and agency principles.

**<u>PLAINTIFFS' FRAUD-ON-THE-MARKET ALLEGATIONS</u>**

138. In pursuing the Section 10(b) claim, Plaintiffs will rely in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things: (a) Defendants made public statements that were rendered misleading because they failed to disclose material facts necessary to prevent such statement from being misleading during the Class Period; (b) the omissions were material; (c) PPDAI ADSs were traded in efficient markets during the Class Period.

139. PPDAI's ADSs traded in efficient markets during the Class Period for the following reasons: (i) the ADSs were traded on NYSE; (ii) on average shares representing more than 2.0% of the total ADSs outstanding were traded weekly during the Class Period; (iii) PPDAI met the criteria for eligibility to file an S-3 Registration Statement during the Class Period; (iv) As a public issuer, PPDAI filed periodic reports with the SEC; (v) PPDAI regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; (vi) PPDAI was followed by at least seven securities analysts employed by major brokerage firms who wrote reports that were widely

distributed and publicly available; (vii) More than ten market makers made a market in PPDAI ADSs during the Class Period; (vii) the price of PPDAI ADSs responded quickly to incorporate and reflect new public information concerning PPDAI during the Class Period.

140. Based on the foregoing, the market for PPDAI ADSs promptly digested current information regarding PPDAI from all publicly available sources and reflected such information in the prices of the shares, and Plaintiffs and members of the Class are entitled to a presumption of reliance upon the integrity of the market.

141. Alternatively, in pursuing their Section 10(b) claim, Plaintiffs are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

**COUNT IV**
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5**
**Against PPDAI, Zhang, and Ho**

142. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

143. This Count is asserted against PPDAI, Zhang, and Ho and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

144. During the Class Period, PPDAI, Zhang, and Ho, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

145. PPDAI, Zhang, and Ho violated §10(b) of the Exchange Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiffs and others similarly situated in connection with their purchases of the Company's ADSs during the Class Period.

146. PPDAI, Zhang, and Ho acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

147. Zhang and Ho, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiffs and other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiffs and Class.

148. As a result of the foregoing, the market price of the Company's ADSs was artificially inflated during the Class Period. In ignorance of the falsity of PPDAI, Zhang, and Ho's statements, Plaintiffs and members of the Class relied on the statements described above and/or the integrity of the market price of the Company's ADSs during the Class Period in purchasing the Company's ADSs at prices that were artificially inflated as a result of PPDAI, Zhang, and Ho's false and misleading statements.

149. Had Plaintiffs and members of the Class been aware that the market price of the Company's ADSs had been artificially and falsely inflated by PPDAI, Zhang, and Ho's misleading statements and by the material adverse information which they did not disclose, they would not have purchased the Company's ADSs at the artificially inflated prices that they did, or at all.

150. As a result of the wrongful conduct alleged herein, Plaintiffs and members of the Class have suffered damages in an amount to be established at trial.

151. By reason of the foregoing, PPDAI, Zhang, and Ho have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiffs and members of the Class for substantial damages which they suffered in connection with their purchases of the Company's ADSs during the Class Period.

152. This action was filed within five years of each Class member's purchase of PPDAI ADSs and within two years of the discovery of the Defendants' fraudulent statements. It is therefore timely.

**COUNT V**
**Violation of Section 20(a) of The Exchange Act**
**Against Zhang and Ho**

153. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

154. During the Class Period, the Zhang and Ho participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

155. As officers and/or directors of a publicly owned company, Zhang and Ho had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

156. Because of their positions of control and authority as senior officers, Zhang and Ho were able to, and did, control the contents of the public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, Zhang and Ho exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. Zhang and Ho therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's ADSs.

157. Zhang and Ho, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, Zhang and Ho had the power to direct the actions of, and exercised the same to cause, the Company to engage in the

unlawful acts and conduct complained of herein. Zhang and Ho exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiffs and the other members of the Class complain.

158. This action was filed within five years of each Class member's purchase of PPDAI ADSs and within two years of the discovery of the Defendants' fraudulent statements. It is therefore timely.

159. By reason of the above conduct, Zhang and Ho are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray for judgment and relief as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiffs as Class representatives;

B. Awarding damages in favor of Plaintiffs and other Class members against all Defendants, jointly and severally, together with interest thereon;

C. Awarding Plaintiffs and the other members of the Class prejudgment and post-judgment interest; and

D. Awarding Plaintiffs and the other members of the Class such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury.

Dated: April 22, 2019

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/Phillip Kim
Phillip Kim
Laurence M. Rosen
Yu Shi
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
lrosen@rosenlegal.com
yshi@rosenlegal.com

*Counsel for Plaintiffs and the Class*