UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X

In re PPDAI GROUP INC. SECURITIES
LITIGATION

---------------------------------------------------------X

This document relates to:
ALL ACTIONS

---------------------------------------------------------X

**OPINION APPROVING FINAL
SETTLEMENT AND
AWARD OF FEES**
18-CV-6716 (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

On December 16, 2021, this Court held a fairness hearing (referred to herein as the "Fairness Hearing") on the proposed settlement of two consolidated federal actions and one state court action seeking relief on behalf of purchasers of PPDAI Group Inc. ("PPDAI") American Depository Shares ("ADSs"). (*See* Dec. 16, 2021 ECF Minute Entry; Motion for Settlement Final Approval ("Mot. for Final Approval"), ECF No. 76.) For the reasons set forth below, the Court finds the parties' settlement agreement, which was preliminarily approved by the Honorable LaShann DeArcy Hall on August 13, 2021 (*see* Aug. 13, 2021 Order, ECF No. 70), as well as the related relief, to be fair, adequate, and reasonable, and grants Plaintiffs' motions.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On November 26, 2018, Plaintiff Weichen Lai initiated this putative class action pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4 *et seq.*, on behalf of investors who acquired ADSs of PPDAI traceable to the company's November 10, 2017 initial public offering ("IPO") and/or between November 10, 2017 and December 1, 2017 (the "Class Period"). (*See* Complaint, ECF No. 1, ¶ 1; Amended Complaint, ECF No. 5, ¶ 1.) On February 21, 2019, the Honorable

James Orenstein granted Golden Section Holding Corporation's ("Golden Section") unopposed motion to serve as lead plaintiff, as well as the parties' stipulation to consolidate the instant action with a related action filed in this district.[1] (*See* Feb. 21, 2019 ECF Order; Stipulation and Proposed Order, ECF No. 21.) Plaintiffs[2] then filed a second amended complaint on April 22, 2019,[3] alleging violations of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77l(a)(2), and 77o, as well as Sections 10(b) and 20(a) of the Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5. (*See* Second Amended Complaint ("SAC"), ECF No. 27, ¶¶ 1, 10, 102–24, 142–59.)

As alleged in the second amended complaint, PPDAI is a "Cayman Islands company based in Shanghai, China" that operates as an "online, peer-to-peer ('P2P') consumer finance marketplace that matches borrowers with lenders for short-term loans." (*Id.* ¶¶ 3, 16, 45–47.) In the fall of 2017, in anticipation of its November 17, 2017

---

[1] Plaintiff Yogendra Goyal filed a separate putative class action in the Eastern District on January 9, 2019, captioned *Goyal v. PPDAI Group Inc., et al.*, No. 19-CV-168 (FB) (JO). In addition, a related state court action based on substantially the same allegations was commenced in the New York Supreme Court, New York County, on September 10, 2018. *See In re PPDAI Group Securities Litigation*, Index No. 654482/2018 (referred to herein as "State Court Action"); (*see also* Joint Decl. in Supp. of Mot. for Fees and Award ("Joint Decl."), ECF No. 78, ¶¶ 12–25 (detailing the State Court Action procedural history).) As noted, the parties' proposed settlement agreement seeks to resolve all three actions.

[2] "Plaintiffs" herein refers to named Plaintiff Weichen Lai and Lead Plaintiff Golden Section, as well as Yizhong Huang and Ravindra Vora, the named plaintiffs in the State Court Action, who have been granted permission to intervene in the instant action for settlement purposes only. (*See* Aug. 13, 2021 Order, ECF No. 71.)

[3] Plaintiffs' second amended complaint names the following Defendants: PPDAI; Jun Zhang; Simon Tak Leung Ho; Tiezheng Li; Honghui Hu; Shaofeng Gu; Ronald Cao; Congliang Li; Neil Nanpeng Shen; Zehui Liu; Qiong Wang; Credit Suisse Securities (USA) LLC; Citigroup Global Markets Inc.; and Keefe, Bruyette & Woods, Inc. (collectively "Defendants"). (*See* SAC, ECF No. 27, ¶¶ 16–26, 31–33.) The ten individual Defendants are named as officers and/or directors of PPDAI, who each reviewed the Registration Statement at issue, whereas Defendants Credit Suisse Securities (USA) LLC, Citigroup Global Markets Inc., and Keefe, Bruyette & Woods, Inc., are named as underwriters of PPDAI's IPO. (*Id.* ¶¶ 27–40.)

IPO, the company issued a registration statement and prospectus ("Registration Statement"), which Plaintiffs allege "contained false and misleading statements of material fact and omitted material facts about PPDAI's business and practices." (*Id*. ¶¶ 4, 48–49.) Specifically, Plaintiffs contend that the Registration Statement stated "that PPDAI had experienced rapid growth in revenues, net income and active users in the years leading up to the IPO, but failed to disclose that this growth had been fueled by illegal lending, underwriting, and collection practices." (*Id*. ¶ 50; *see also id.* ¶¶ 5–8, 50–91.) For example, Plaintiffs claim that the Registration Statement failed to disclose that PPDAI secretly downloaded its app users' contact lists and spammed delinquent borrowers' contacts in an effort to embarrass them into repayment — an unlawful practice known as "contact list bombing." (*Id*. ¶¶ 6, 59, 61–62, 65–74.) In addition, Plaintiffs allege that although PPDAI indicated in its Registration Statement that the company was in compliance with Chinese laws capping private loan interest rates at 36%, in actuality, the company imposed annual interest rates above 60%, and even as high as 708%. (*Id*. ¶¶ 7, 55, 85–91.) Further, Plaintiffs claim that the Registration Statement did not disclose that PPDAI continued lending to college students even after the Chinese government banned such practices. (*Id*. ¶¶ 8, 75–84.)

Shortly after PPDAI's IPO, Plaintiffs assert that the Chinese government "cracked down on PPDAI and the P2P lending industry," leading to the price of PPDAI's ADSs dropping from the November 2017 IPO price of $13, to $6.19 on November 26, 2018, the date this action was commenced. (*Id*. ¶¶ 9, 129–35.) This devaluation allegedly constituted more than a hundred million dollars in losses for investors. (*Id*. ¶ 9.) As a result, the second amended complaint sets forth three categories of claims: (1) Section 11 and Section 15 Securities Act claims for all purchasers of PPDAI ADSs "pursuant or traceable" to PPDAI's Registration Statement; (2) Section 12(a)(2)

and Section 15 Securities Act claims for purchasers of PPDAI ADSs "directly from the Underwriters" at the IPO price; and (3) Section 10(b) and Section 20(a) Exchange Act claims for all purchasers of PPDAI ADSs during the Class Period, unless they purchased directly from the Underwriters at the IPO price. (*Id.* ¶¶ 1, 102–24, 142–59.)

After Defendants filed a motion to dismiss Plaintiffs' second amended complaint (*see* Mot. to Dismiss, ECF No. 48), the parties requested a stay of proceedings in order to pursue mediation, which Judge DeArcy Hall granted on April 13, 2020 (*see* Apr. 13, 2020 ECF Order; Defs.' Apr. 10, 2020 Letter, ECF No. 55). Following mediation, the parties requested that the Court lift the stay. (*See* June 17, 2020 ECF Order; Defs.' June 15, 2020 Letter, ECF No. 56.) On December 9, 2020, however, while Defendants' motion to dismiss remained pending, the parties reported that they had reached a settlement in principle. (Pls.' Dec. 9, 2020 Letter, ECF No. 57.)[4] On June 11, 2021, the parties then filed a proposed settlement agreement and a motion for preliminary approval (*see* Settlement Agreement ("Settl. Agr."), ECF No. 64; *see also* ECF Nos. 65, 66), which Judge DeArcy Hall granted on August 13, 2021 (Aug. 13, 2021 Order, ECF No. 70).

Currently before the Court are the parties' motion for final approval of the class action settlement and a motion for attorneys' fees and award to Plaintiffs. (*See* Mot. for Final Approval, ECF No. 76; Motion for Attorney Fees and Expenses, and Award to Plaintiffs ("Mot. for Fees and Award"), ECF No. 77; *see also* Joint Decl. in Supp. of Mot. for Fees and Award ("Joint Decl."), ECF No. 78.) On October 21, 2021, Judge DeArcy Hall referred Plaintiffs' motions to the undersigned magistrate judge for a report and

---

[4] Following a March 22, 2021 status conference before Judge DeArcy Hall (Mar. 22, 2021 ECF Minute Entry), as well as a March 24, 2021 letter from Defendants indicating their consent (Defs.' Mar. 24, 2021 Letter, ECF No. 60), the District Court terminated Defendants' pending motion to dismiss (ECF No. 48) with leave to renew if the parties' proposed settlement did not receive final approval from the Court (Mar. 26, 2021 ECF Order).

recommendation and scheduled a fairness hearing for December 16, 2021. (Oct. 21, 2021 ECF Order); *see also* Fed. R. Civ. P. 23(e)(2). Following the telephonic Fairness Hearing (*see* Dec. 16, 2021 ECF Minute Entry; Fairness Hearing Transcript ("Tr."), ECF No. 82), the parties consented to the undersigned magistrate's jurisdiction (ECF Nos. 81, 83).

For the reasons set forth below, the Court grants the motion for final settlement approval and the motion for attorneys' fees and award to Plaintiffs.

## DISCUSSION

### I.    Settlement Agreement, Fund Allocation & Notification to Class

The proposed settlement agreement defines the settlement class as:

> [A]ll Persons that purchased or otherwise acquired PPDAI ADSs during the Settlement Class Period [November 10, 2017 through May 9, 2018], which includes all Persons who purchased or otherwise acquired PPDAI ADSs pursuant or traceable to PPDAI's Offering Materials. Excluded from the Settlement Class are Defendants, the officers and directors of PPDAI or the Underwriter Defendants (at all relevant times), members of their immediate families, and their legal representatives, heirs, successors or assigns, and any entity in which any Defendant has a controlling interest; provided, however, that any Investment Vehicle shall not be excluded from the Settlement Class. Also excluded from the Settlement Class are those Persons who would otherwise be Settlement Class Members but who timely and validly exclude themselves therefrom.

(Settl. Agr., ECF No. 64, at 15 ¶¶ 1.29–30.)[5]

Members of the settlement class will be entitled to a *pro rata* share of the net settlement fund of $9,000,000, less: "(i) court awarded attorneys' fees; (ii) notice and administration expenses; (iii) any required Taxes; (iv) court awarded litigation

---

[5] The Court notes that the Settlement Class Period (November 10, 2017 through May 9, 2018) runs longer than the Class Period listed in Plaintiffs' second amended complaint. (*See* SAC, ECF No. 27, ¶ 1 (defining the Class Period as November 10, 2017 to December 1, 2017).) This discrepancy does not alter the Court's analysis regarding the fairness of the parties' proposed settlement. *Cf. In re Vizio, Inc., Consumer Priv. Litig.*, No. 16-ML-2693 (JLS) (KES), 2019 WL 12966639, at *2 (C.D. Cal. Jan. 4, 2019) (observing a differing class period in the pleading and in the proposed settlement agreement).

expenses; and (v) any other fees or expenses approved by the court." (*Id.* at 12 ¶ 1.15, 15 ¶ 1.28.)[6]

In exchange for their share of the net settlement fund, members of the settlement class release:

> [A]ll claims, demands, losses, costs, interest, penalties, fees, attorneys' fees, expenses, rights, causes of action, actions, duties, obligations, judgments, debts, sums of money, suits, contracts, agreements, promises, damages, and liabilities of every nature and description, including "Unknown Claims" as defined below,[7] whether direct or indirect, representative, class, individual, asserted or unasserted, matured or unmatured, accrued or unaccrued, foreseen or unforeseen, disclosed or undisclosed, contingent or fixed or vested, at law or equity, whether arising under federal, state, local, foreign, statutory, common or administrative, or any other law, statute, rule, or regulation, both (a) arising out of or related to the facts which were alleged or which could have been alleged by Plaintiffs or any member of the Settlement Class against the Released Parties; and (b) arising out of or related to the purchase, acquisition, holding, sale, disposition, transfer, or investment of PPDAI ADSs issued in the IPO during the Settlement Class Period. "Released Claims" also includes any and all claims arising out of, relating to, or in connection with the Settlement or resolution of the Actions (including Unknown Claims), except claims to enforce any of the terms of this Stipulation, or the claims of any Person that submits a request for exclusion that is accepted by the Court.

---

[6] Each class members' share will be determined based on the relative size of their "recognized loss" as compared to the total recognized claims of all accepted claimants. (Settl. Agr., ECF No. 64, at 26 ¶ 6.3; *see also* Mem. in Supp. of Mot. for Final Approval, ECF No. 76-1, at 17–18; Notice of Pendency ("Notice"), attached as Ex. A to Straub Decl., ECF No. 78-1, at 5–8 ("[A] 'Distribution Amount' will be calculated for each Authorized Claimant, which shall be the Authorized Claimant's Recognized Loss divided by the aggregate Recognized Losses of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. If any Authorized Claimant's Distribution Amount calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to such Authorized Claimant.").)

[7] "Unknown Claims" are defined as:

(i) any and all claims and potential claims against Released Parties which Plaintiffs or any Settlement Class Members do not know or suspect to exist in their, his, her, or its favor as of the Effective Date, and (ii) any claims against Plaintiffs which Defendants do not know or suspect to exist in their favor, which if known by any of them, might have affected their, his, her, or its decision(s) with respect to the Settlement.

(Settl. Agr., ECF No. 64, at 16 ¶ 1.34.) This also includes waiver of the provisions, rights, and benefits of Cal. Civ. Code § 1542 and any other similar provisions of state or federal law. (*Id.*)

(*Id.* at 14 ¶ 1.24.) Defendants also release any claims they may have against Plaintiffs, Plaintiffs' counsel, and any member of the settlement class, except for "claims to enforce any terms of [the settlement agreement]." (*Id.* ¶ 1.25.)

According to the claims administrator, A.B. Data, Ltd. ("A.B. Data"), the notice of proposed settlement was mailed to 8,189 potential class members, published in Investor's Business Daily, and transmitted over PR Newswire. (Reply Mem. in Supp. of Pls.' Mot. ("Reply in Supp."), ECF No. 79, at 2; Declaration of Jack Ewashko ("Ewashko Decl."), ECF No. 79-1, ¶¶ 4–6; Declaration of Steven J. Straub ("Straub Decl."), ECF No. 78-1, ¶ 9; *see also* Tr., ECF No. 82, at 6:15–23.) In September 2021, A.B. Data also created a toll-free helpline and website to assist class members seeking further information about the instant action and proposed settlement. (Tr., ECF No. 82, at 6:23–7:6; Ewashko Decl., ECF No. 79-1, ¶¶ 7–8; Straub Decl., ECF No. 78-1, ¶¶ 10–11.) As of December 9, 2021, A.B. Data had received 483 claim forms and no objections to the proposed settlement or requests for exclusions by any settlement class member.[8] (*See* Reply in Supp., ECF No. 79, at 2; Ewashko Decl., ECF No. 79-1, ¶¶ 9–10.)

In addition to the payments to the settlement class, the settlement agreement also provides for an award to Plaintiffs' counsel[9] for fees in the amount of $3,000,000 (one-third of the settlement fund) plus $69,681 in expenses, as well as a total award of $8,000

---

[8] The deadline to file an objection to the proposed settlement was November 2, 2021, and the deadline to file a claim was December 2, 2021. (Aug. 13, 2021 Order, ECF No. 70, ¶ 16; Joint Decl., ECF No. 78, ¶¶ 70, 73; *see also* Notice, attached as Ex. A to Straub Decl., ECF No. 78-1.)

[9] For the purposes of this opinion, "Plaintiffs' counsel" herein refers to counsel for the consolidated federal actions, The Rosen Law Firm, P.A., co-lead counsel for the State Court Action, Robbins Geller Rudman & Dowd LLP and Scott+Scott Attorneys at Law LLP, as well as additional state court counsel: Robbins LLP and Hedin Hall. (*See* Joint Decl., ECF No. 78, ¶ 1; Declaration of Stephen J. Oddo ("Oddo Decl."), ECF No. 78-5; Declaration of David W. Hall ("Hall Decl."), ECF No. 78-6.)

($2,000 each) to the two federal Plaintiffs, Golden Section and Weichen Lai, and two state court Plaintiffs, Ravindra Vora and Yizhong Huang, in connection with their representation of the settlement class. (*See* Joint Decl., ECF No. 78, ¶¶ 75–80; *see also* Mem. in Supp. of Mot. for Fees and Award, ECF No. 77-1, at 1–2.)

## II. Legal Standard

The Second Circuit has expressed a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116–17 (2d Cir. 2005) (noting that "[t]he compromise of complex litigation is encouraged by the courts and favored by public policy"). Under Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of . . . a class proposed to be certified for purposes of settlement [] may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e); *see also In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 328–30 (E.D.N.Y. 2010). To approve a class settlement under Rule 23(e), "the district court must determine that it is 'fair, adequate, and reasonable, and not a product of collusion.'" *Loc. 1180, Commc'ns Workers of Am., AFL-CIO v. City of New York*, 392 F. Supp. 3d 361, 374 (S.D.N.Y. 2019) (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)). In conducting this inquiry, courts consider the substantive and procedural fairness of a proposed settlement to determine "whether 'the terms of the settlement and the negotiation process leading up to it' are fair." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018) (quoting *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008)), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) (summary order); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("The District Court determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms.").

For an evaluation of substantive fairness, it is well settled in this circuit that courts must consider the nine *Grinnell* factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009). In determining procedural fairness, there is a "presumption of fairness, adequacy, and reasonableness" that attaches when a class settlement is reached following "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc.*, 396 F.3d at 116; *see also Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 320 (S.D.N.Y. 2019); *Dover v. Brit. Airways, PLC (UK)*, 323 F. Supp. 3d 338, 349 (E.D.N.Y. 2018). Although settlement approval is subject to a district court's discretion, *see, e.g., McReynolds*, 588 F.3d at 800; *Denney v. Deutsche Bank AG*, 443 F.3d 253, 273 (2d Cir. 2006), courts "must eschew rubber stamp approval in favor of an independent evaluation." *Grinnell*, 495 F.2d at 462. However, "at the same time, [a court] must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Id.*

## III.   Analysis

### A.  Class Certification

"Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have

been satisfied." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012); *see also Johnson*, 333 F.R.D. at 318. On August 13, 2021, the District Court preliminarily certified the class for the purposes of settlement under Federal Rules of Civil Procedure 23(a) and 23(b)(3). (Aug. 13, 2021 Order, ECF No. 70, ¶ 4.) The Court now grants final certification for settlement purposes as well.

    1.  Rule 23(a)

Rule 23(a) sets forth four threshold requirements for class certification: (1) numerosity ("joinder of all members is impracticable"); (2) commonality ("[common] questions of law or fact"); (3) typicality ("claims or defenses of the representative parties are typical of the claims or defenses of the class"); and (4) adequacy ("representative parties will fairly and adequately protect the interests of the class"). Fed. R. Civ. P. 23(a).

    a)  *Numerosity*

When a class consists of forty or more members, numerosity is presumed. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also Scott v. Quay*, 338 F.R.D. 178, 187 (E.D.N.Y. 2021). "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010). Here, PPDAI offered and sold 17 million ADSs as part of the company's IPO, and these ADSs were traded on the New York Stock Exchange during the Settlement Class Period. (*See* SAC, ECF No. 27, ¶¶ 2, 16; *see also* Mem. in Supp. of Prelim. Approval, ECF No. 66, at 17.) Moreover, Plaintiffs distributed the notice of proposed settlement to 8,189 potential class members and the claims administrator has received 483 claim forms. (*See* Tr., ECF No. 82, at 6:19–20, 9:1–9:9; Ewashko Decl., ECF No. 79-1, ¶¶ 4–6, 9–10.) Accordingly, Plaintiffs have demonstrated that the settlement class consists of well over

forty people, and numerosity is satisfied. *See Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*, 338 F.R.D. 205, 211 (S.D.N.Y. 2021).

      b)  *Commonality & Typicality*

A class may only be certified if "there are questions of law or fact common to the class," and "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(2), (3). Analysis of the requirements of commonality and typicality "tend to merge" because "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011); *see also Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997); *Scott*, 338 F.R.D. at 188.

"The 'commonality requirement is met' where 'the plaintiffs' claims arise from the same alleged course of conduct and are based on legal theories similar to those of all the class members.'" *Hawaii Structural Ironworkers Pension Tr. Fund, Inc.*, 338 F.R.D. at 211–12 (quoting *In re Deutsche Telekom Ag Sec. Litig.*, 229 F. Supp. 2d 277, 281 (S.D.N.Y. 2002)). Similarly, typicality is met "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376.

In this case, there are common questions of law and fact related to whether Defendants misrepresented or omitted material facts about PPDAI's practices in the company's Registration Statement, and whether that caused members of the settlement class to suffer compensable losses. (*See* Mem. in Supp. of Prelim. Approval, ECF No. 66, at 18.) Moreover, each class member's claim arises out of the same course of events and requires the same legal arguments as to Defendants' liability. (*See id.* at 18.)

Accordingly, Rule 23(a)'s requirements of commonality and typicality are satisfied. *See Hawaii Structural Ironworkers Pension Tr. Fund, Inc.*, 338 F.R.D. at 212; *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 52–53 (E.D.N.Y. 2019); *see also In re Grana y Montero S.A.A. Sec. Litig.*, No. 17-CV-1105 (LDH) (ST), 2021 WL 4173684, at *9 (E.D.N.Y. Aug. 13, 2021), *report and recommendation adopted*, No. 17-CV-1105 (LDH) (ST), 2021 WL 4173170 (E.D.N.Y. Sept. 14, 2021).

c)   *Adequacy of Representation*

To satisfy Rule 23(a)(4)'s requirement "that all members of the class are adequately represented, district courts must make sure that the members of the class possess the same interests, and that no fundamental conflicts exist among the members." *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). In addition, courts must ensure "that 'class counsel is qualified, experienced, and generally able to conduct the litigation.'" *Marisol A.*, 126 F.3d at 378 (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

In this case, Plaintiffs' interests align with the interests of the settlement class because each Plaintiff purchased PPDAI ADSs during the Settlement Class Period and alleges losses resulting from Defendants' purported misconduct. (*See* Mem. in Supp. of Prelim. Approval, ECF No. 66, at 19.) Plaintiffs have also demonstrated a commitment to the litigation by retaining qualified and experienced lead counsel in their respective federal and state court actions. (*See id.* at 19–20; Rosen Law Resume, ECF No. 8-4; Robins Geller Rudman & Down LLP Resume, attached as Ex. 3 to Declaration of Joseph Russello, ECF No. 78-3; Scott+Scott Resume, attached as Ex. 3 to Declaration of Daryl F. Scott, ECF No. 78-4.) Plaintiffs' counsel have substantial experience in securities class actions, and have litigated on behalf of the putative class in multiple fora over several

years. Therefore, Plaintiffs have sufficiently shown they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see also Lea v. Tal Education Grp.*, No. 18-CV-5480 (KHP), 2021 WL 5578665, at *6 (S.D.N.Y. Nov. 30, 2021); Fed. R. Civ. P. 23(e)(2)(A).

    2.  <u>Rule 23(b)(3)</u>

"In addition to satisfying the Rule 23(a) requirements, certification must be appropriate under Rule 23(b)." *In re Grana y Montero S.A.A. Sec. Litig.*, 2021 WL 4173684, at *10 (quoting *B & R Supermarket, Inc. v. Mastercard Int'l Inc.*, No. 17-CV-2738 (MKB) (JO), 2021 WL 234550, at *20 (E.D.N.Y. Jan. 19, 2021)); *see also Rosi v. Aclaris Therapeutics, Inc.*, No. 19-CV-7118 (LJL), 2021 WL 5847420, at *2 (S.D.N.Y. Dec. 9, 2021). Rule 23(b)(3) permits a class action to be maintained if the court finds "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang v. Tesla, Inc.*, 338 F.R.D. 428, 441 (E.D.N.Y. 2021) (quoting *Amchem*, 521 U.S. at 623). Predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Id.* (citing *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010)). To establish the superiority prong of this inquiry, "the moving party must show that 'the class action presents economies of time, effort and expense, and promote[s] uniformity of decision.'" *Lea*, 2021 WL 5578665, at *6 (quotation marks omitted) (quoting *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013)).

In this case, as discussed above, Plaintiffs and the settlement class members suffered the same basic harm due to the same alleged misconduct by Defendants. Therefore, the Court finds that the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Wang*, 338 F.R.D. at 441; *see also Amchem*, 521 U.S. at 625 (explaining that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws").

In addition, in light of the uniformity of the class members' claims and the complexities associated in advancing litigation against international actors, there is a strong basis for a finding of superiority. *See Public Emps.' Ret. Sys. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 120 (S.D.N.Y. 2011) (finding superiority where "there is no overwhelming interest by class members to proceed individually" and noting that in most securities actions, "[m]ultiple actions by multiple plaintiffs could also significantly reduce the prospects for recovery as it would decrease plaintiffs' bargaining power").

## B.  Settlement Approval

As discussed above, a district court's approval of a class action settlement is contingent on a finding that the settlement is "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2), which is determined by an evaluation of a settlement's procedural and substantive fairness. *See McReynolds*, 588 F.3d at 803–04; *D'Amato*, 236 F.3d at 85; *see also Lea*, 2021 WL 5578665, at *7; *In re Grana y Montero S.A.A. Sec. Litig.*, 2021 WL 4173684, at *11.[10]

---

[10] The Court notes that "Rule 23 also requires the court to consider several criteria — some of which overlap with the *Grinnell* factors — that inform whether the settlement is fair, reasonable, and adequate." *In re Parking Heaters, Antitrust Litig.*, No. 15-MC-940 (DLI) (JO), 2019 WL 8137325, at *4 (E.D.N.Y. Aug. 15, 2019), *report and recommendation adopted*, No. 15-MC-940 (DLI) (JO) (E.D.N.Y. Sept. 30, 2019); *see also* Fed. R. Civ. P. 23(e)(2)(A)–(D). These factors do not displace the *Grinnell* factors, but rather "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal,"

1. <u>Procedural Fairness</u>

Plaintiffs represent that the $9,000,000 global settlement was reached after extensive and arm's-length negotiations between experienced counsel over the course of several months, and included an all-day mediation on May 21, 2020, with mediator Robert A. Meyer, Esq. of JAMS. (Joint. Decl. in Supp., ECF No. 78, ¶¶ 41–51; Mem. in Supp. of Mot. for Final Approval, ECF No. 76-1, at 5; Tr., ECF No. 82, at 10:2–13.) Plaintiffs also note that settlement negotiations did not commence until after the state court issued a ruling on Defendants' motion to dismiss and after Defendants filed a motion to dismiss in the consolidated federal action. (*See* Joint. Decl. in Supp., ECF No. 78, ¶¶ 41–51; *see also* Tr., ECF No. 82, at 9:20–24, 12:25–13:20 (noting, *inter alia*, that although Plaintiffs defeated Defendants' motion to dismiss in the state court action, "several of the allegations were dismissed" and "[t]he allegation that was upheld at the time of the settlement was being appealed by [D]efendants, so there's no guarantee that the appellate court would uphold the New York Supreme Court's decision on that").) In addition, as detailed in the supporting documents and at the Fairness Hearing, Plaintiffs' counsel spent extensive time investigating the facts of this case and evaluating the strengths and weaknesses of the claims. (*See* Mem. in Supp. of Mot. for Final Approval, ECF No. 76-1, at 10–11; Joint. Decl. in Supp., ECF No. 78, ¶¶ 47–51; Tr., ECF No. 82, at 9:17–10:13.)

These facts support the conclusion that the settlement process was procedurally fair. *See Wal-Mart Stores, Inc.*, 396 F.3d at 116 (noting the "presumption of fairness,

---

given that "[t]he central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. Accordingly, in light of the significant overlap between the relevant Second Circuit case law and the Rule 23(e)(2) factors, the Court incorporates the Rule 23 factors into its analysis throughout.

adequacy, and reasonableness" that attaches when a class settlement is reached following "arm's-length negotiations between experienced, capable counsel after meaningful discovery"); *see also Lea*, 2021 WL 5578665, at *8; *Machniewicz v. Uxin Ltd.*, 19-CV-822 (MKB) (VMS) (E.D.N.Y. Sept. 8, 2021), ECF No. 61, at 3 (approving of global settlement of federal and state court securities class action that "was negotiated at arm's length" after a "mediation conducted by an experienced mediator who was familiar with [the federal] Action and the State Court Action").

Accordingly, the Court concludes "that the parties gained sufficient information about the claims through mediation and settlement discussions to allow them to make a reasoned evaluation of the chances of success," and therefore, "finds that there was procedural fairness in reaching the proposed settlement." *Burns v. FalconStor Software, Inc.*, No. 10-CV-4572 (ERK) (CPL), 2014 WL 12917621, at *4 (E.D.N.Y. Apr. 11, 2014), *report and recommendation adopted*, No. 10-CV-4572 (ERK) (CPL) (E.D.N.Y. May 8, 2014); *see also* Fed. R. Civ. P. 23(e)(2)(B).

### 2. Substantive Fairness

For consideration of whether "the relief provided for the class is adequate," Fed. R. Civ. P. 23(e)(2)(C), the Court now turns to the *Grinnell* factors to evaluate the proposed settlement's substantive fairness.

### a) *Complexity, Expense & Likely Duration of Litigation*

Although difficult to predict, the complexity, expense, and likely duration of the federal and state court actions favor the proposed settlement. Securities class actions are "inherently complex." *Burns*, 2014 WL 12917621, at *4 (citing *Velez v. Novartis Pharms. Corp.*, No. 04-CV-9194 (CM), 2010 WL 4877852, at *12 (S.D.N.Y. Nov. 30, 2010)); *see also Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349 (NGG) (RER), 2021 WL 1259559, at *5 (E.D.N.Y. Jan. 6, 2021) ("Class action suits have a well-deserved reputation as being

16

most complex[.]" (quotation marks omitted)); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. 12-MD-2389, 2015 WL 6971424, at *3 (S.D.N.Y. Nov. 9, 2015) ("As a general rule, securities class actions are notably difficult and notoriously uncertain to litigate." (quotation marks omitted)), *aff'd sub nom. In re Facebook, Inc.*, 674 F. App'x 37 (2d Cir. 2016) (summary order).

This case has already been pending for more than three years. (*See* Compl., ECF No. 1.) Even assuming Plaintiffs can withstand Defendants' motion to dismiss, the parties would need to conduct extensive fact and expert discovery, litigate motions for class certification and summary judgment, and potentially carry out a trial and subsequent appeals, all before any class members might recover an award. (*See* Mem. in Supp. of Mot. for Final Approval, ECF No. 76-1, at 7–8; Joint Decl., ECF No. 78, ¶¶ 61, 65.) Litigating this action is also made significantly more complex, expensive, and risky by virtue of the fact that Defendants are based in China. This facet "adds complications, requiring Plaintiffs to follow international conventions to retrieve documents and elicit testimony and imposing the expense and complication of obtaining translation services and retaining bilingual or other specialized attorneys to facilitate document review." (Mem. in Supp. of Mot. for Final Approval, ECF No. 76-1, at 7; *see also* Joint Decl., ECF No. 78, ¶ 64; Tr., ECF No. 82, at 12:1–24.) As discussed during the Fairness Hearing, "Chinese law imposes restrictions on discovery and what kind of evidence may be taken out of China," and "China does not allow depositions . . . in these cases against Chinese defendants . . . . [s]o if this case were to go forward without a settlement, discovery would be very difficult and expensive . . . [and] would take a pretty long time to resolve the discovery issues." (Tr., ECF No. 82, at 12:5–24.) Accordingly, this *Grinnell* factor, in addition to Federal Rule of Civil Procedure 23(e)(2)(C)(i), favors settlement.

b) *Reaction of the Class to the Settlement*

The reaction of the class also favors the proposed settlement. As the Second Circuit has noted, "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart*, 396 F.3d at 118; *see also In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 311 (E.D.N.Y. 2006). To date, 8,189 copies of the notice of proposed settlement were mailed to potential settlement class members, and notice was published in Investor's Business Daily and transmitted over PR Newswire. (*See* Tr., ECF No. 82, at 6:15–23; Reply in Supp., ECF No. 79, at 2; Ewashko Decl., ECF No. 79-1, ¶¶ 4–6.) In addition, a website and toll-free number were created for this specific settlement agreement. (*See* Tr., ECF No. 82, at 6:23–7:6; Ewashko Decl., ECF No. 79-1, ¶¶ 7–8; Straub Decl., ECF No, 78-1, ¶¶ 10–11.) Class members had until November 2, 2021 to object to the settlement or request exclusion from the settlement class, and as of the December 16, 2021 Fairness Hearing, there had not been a single objection or request for exclusion.[11] (*See* Tr., ECF No. 82, at 7:6–8, 8:15–9:9; Reply in Supp., ECF No. 79, at 1–2; Ewashko Decl., ECF No. 79-1, ¶¶ 9–10.)

c) *Stage of the Proceedings & the Amount of Discovery Completed*

For this factor to favor settlement, the court must ensure that the parties have conducted a factual investigation sufficient for the court to evaluate the proposed settlement and confirm that pretrial negotiations were adequately adversarial. *See Plummer v. Chem. Bank*, 668 F.2d 654, 660 (2d Cir. 1982); *In re Austrian and German Bank*

---

[11] Because the December 16, 2021 Fairness Hearing was originally scheduled as an in-person proceeding (*see* Aug. 13, 2021 ECF Order), and to ensure that any potential settlement class member who mistakenly appeared in person could be identified, the Court sent staff to the courtroom originally designated for the hearing and placed signs outside of it, which signs contained the call-in information for the telephonic hearing (*see* Tr., ECF No. 82, at 7:15–8:14). However, only counsel appeared at the Fairness Hearing.

*Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Although the parties here have not engaged in formal discovery, the record demonstrates that Plaintiffs' counsel have thoroughly investigated the strengths and weaknesses of the claims and conducted extensive legal research in responding to the motions to dismiss in the federal and state court actions.[12] (*See* Joint Decl., ECF No. 78, ¶¶ 47–51; Mem. in Supp. of Mot. for Final Approval, ECF No. 76-1, at 10–11; Pls.' Mem. in Opp'n to Mot. to Dismiss, ECF No. 51.)

Therefore, because the Court finds that counsel had sufficient information "to appreciate the merits of the case," settlement is favored. *Burns*, 2014 WL 12917621, at \*5; *see also Lea*, 2021 WL 5578665, at \*9.

### d) *Risks of Establishing Liability*

"In considering this factor, the Court need not adjudicate the disputed issues or decide unsettled questions; rather, 'the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement.'" *In re Grana y Montero S.A.A. Sec. Litig.*, 2021 WL 4173684, at \*13 (quoting *In re Glob. Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004)). Here, Plaintiffs face substantial risks in establishing liability. As previously noted, Defendants' motion to dismiss (ECF No. 48) was stayed pending approval of the proposed settlement (*see* Mar. 26, 2021 ECF Order). Plaintiffs concede the possibility that the motion to dismiss could be granted, at least in part — particularly considering that the corresponding state court complaint was partially dismissed. (Joint Decl., ECF No. 78, ¶¶ 55–56; *see also* Defs.' Mem. in Supp. of

---

[12] Indeed, Plaintiffs' counsel reaffirmed during the Fairness Hearing that following a full-day mediation with a mediator from JAMS, "the parties continued their settlement negotiations, sometimes with and sometimes without the involvement of [the mediator], and that "settlement discussions went on for the next six months" while litigation proceeded in federal and state court. (Tr., ECF No. 82, at 10:2–11.)

Motion to Dismiss, ECF No. 49; Tr., ECF No. 82, at 12:25–13:10.) Moreover, "[w]ere this case to go forward, the documents, witnesses, and evidence are going to be mostly if not all in the People's Republic of China," and thus, as discussed above, "[t]here's a risk of not being able to [conduct] discovery to prove [P]laintiffs' case should this case survive motion to dismiss and [D]efendants' appeal." (Tr., ECF No. 82, at 12:2–4, 13:11–13.) In addition, Plaintiffs' counsel noted that there is also a risk that the state court Plaintiffs would not be able to certify a nationwide class following the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773 (2017). (*Id.* at 13:13–20; *see also* Joint Decl., ECF No. 78, ¶ 61.)

For all of these reasons, the Court finds that the $9,000,000 proposed settlement eliminates a substantial risk of establishing Defendants' liability and favors Plaintiffs' motion for approval. *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177; *see also Massiah v. MetroPlus Health Plan, Inc.*, No. 11-CV-5669 (BMC), 2012 WL 5874655, at *4 (E.D.N.Y. Nov. 20, 2012) (explaining that "[o]ne purpose of a settlement is to avoid the uncertainty of a trial on the merits"); Fed. R. Civ. P. 23(e)(2)(C)(i).

e)   *Risks of Establishing Damages*

Establishing loss causation in securities cases "is a complicated concept, both factually and legally," and "typically involve[s] conflicting expert opinion about the difference between the purchase price and the stock's 'true' value absent the alleged fraud." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 459 (quotation marks omitted); *see also Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 365 (S.D.N.Y. 2002) ("The determination of damages, like the determination of liability, is a complicated and uncertain process, typically involving conflicting expert opinions."). In addition, moving forward to a trial naturally introduces an element of risk because a jury may only award a fraction of Plaintiffs' estimated damages. *See In re Marsh & McLennan*

20

*Companies, Inc. Sec. Litig.*, No. 04-CV-8144 (CM), 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009) ("If there is anything in the world that is uncertain when a [securities] case like this one is taken to trial, it is what the jury will come up with as a number for damages.").

Defendants in this case maintain that "the alleged depreciation in [PPDAI's] shares did not actually *result from* the materialization of a risk contained within a material misstatement," and that "any alleged losses were caused by a market-wide phenomenon [] that resulted in losses across the industry . . . ." (Defs.' Mem. in Supp. of Motion to Dismiss, ECF No. 49, at 20–21 (emphasis in original) (citation and quotation marks omitted).) Plaintiffs also note that "[a]s in other complex securities cases," the parties here would have to "rely on expert testimony to assist the jury in determining damages." (Mem. in Supp. of Mot. for Final Approval, ECF No. 76-1, at 12.) Plaintiffs thus acknowledge they face a considerable challenge "establishing a causal connection between their allegations and their monetary loss," as well as overcoming Defendants' arguments that "PPDAI's share price dropped due to reasons other than [Defendants'] alleged misrepresentations." (Joint Decl., ECF No. 78, ¶¶ 58–59.)

In light of these risks, the Court finds this factor also favors settlement. *See Mikhlin*, 2021 WL 1259559, at *6 (noting that where "[b]oth parties would present expert testimony on the issue of damages," it is "'virtually impossible to predict' which side's testimony would be found more credible, as well as 'which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions.'" (quoting *Strougo v. Bassini*, 258 F. Supp. 2d 254, 259–60 (S.D.N.Y. 2003))); *see also* Fed. R. Civ. P. 23(e)(2)(C)(i).

f) *Risks of Maintaining Class Action Through Trial*

"Courts generally acknowledge that a contested motion to certify a class would pose at least some increased risk that class certification might be denied." *Mikhlin*, 2021 WL 1259559, at *6 (citing *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 40). Here, where the parties stipulated to class certification for the purpose of settlement, and Defendants would have vigorously opposed certification otherwise (*see* Mem. in Supp. of Mot. for Final Approval, ECF No. 76-1, at 13–14), "[t]he risks attendant to certifying a class and defending any decertification motion supports approval of the settlement." *Lea*, 2021 WL 5578665, at *10 (citing *Garland v. Cohen & Krassner*, No. 08-CV-4626 (KAM) (RLM), 2011 WL 6010211, at *8 (E.D.N.Y. Nov. 29, 2011)); *see also In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *3 ("The risk of maintaining a class throughout this long and protracted litigation weighs in favor of settlement approval.").

g) *Ability of Defendants to Withstand a Greater Judgment*

"This factor stands for the proposition that if a defendant could not withstand a greater judgment than what is provided for in the settlement, then the settlement is more likely to be reasonable, fair, and adequate." *In re Grana y Montero S.A.A. Sec. Litig.*, 2021 WL 4173684, at *14 (citing *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997)). As to this factor, Plaintiffs point to the fact that "[j]udgments obtained in the U.S. are not necessarily enforceable in China and, in fact, typically are not enforceable there," which leads to a "substantial risk that Plaintiffs would be unable to collect any judgment even if they prevailed in the [a]ctions." (Mem. in Supp. of Mot. for Final Approval, ECF No. 76-1, at 14; *see also* Tr., ECF No. 82, at 14:5–9 (explaining that "even if [P]laintiffs win summary judgment, win a trial, win all the appeals, proposed trial appeals, and get a judgment, the odds that they could enforce that

22

judgment is pretty slim" because "China typically does not enforce U.S. judgments");
Joint Decl., ECF No. 78, ¶ 62.)

Additionally, Plaintiffs' counsel noted during the Fairness Hearing that PPDAI's
legal defense in this case is being funded by insurance, "and were this case to go
forward . . . through summary judgment and trial, there's no guarantee that there
would be any money left in the insurance policy." (Tr., ECF No. 82, at 13:22–14:4.)
Further, even if Defendants could withstand a greater judgment, which is not at all clear
from the record, that does not necessarily prevent a finding that the settlement
agreement is substantively fair. *See In re Payment Card Interchange Fee & Merch. Disc.
Antitrust Litig.*, 330 F.R.D. at 47 ("Although the Court finds that this factor weighs
against a grant of final approval, it does not necessarily preclude a finding that the
settlement is fair."). Given the uncertainties here, the Court finds that this factor, on
balance, also weighs in favor of approval.

h)  *Range of Reasonableness of the Settlement Fund in Light of Best
    Possible Recovery and in Light of All Attendant Risks of Litigation*

These final two *Grinnell* factors "are often combined for the purposes of
analysis." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D.
at 48. "In considering the reasonableness of the settlement fund, a court must compare
the terms of the compromise with the likely rewards of litigation." *Id.* (quotation marks
omitted); *see also* Fed. R. Civ. P. 23(e)(2)(C)(i). "[S]ettlements have been approved as
reasonable where the settlement provides a 'meaningful benefit' to the class." *Burns*,
2014 WL 12917621, at *5 (quoting *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d at
340).

Here, the $9,000,000 settlement represents 6.4% of the maximum estimated
aggregate damages, $140,000,000, assuming Plaintiffs can prove all their relevant

causation arguments. (*See* Mem. in Supp. of Mot. for Final Approval, ECF No. 76-1, at 14–15; Tr., ECF No. 82, at 14:11–16.) Plaintiffs contend this proportion "falls within the range of settlements recently approved in securities class actions." (Mem. in Supp. of Mot. for Final Approval, ECF No. 76-1, at 15.) According to Plaintiffs, between 2011 and 2020, the median settlement recovery for cases alleging claims under both Section 11 of the Securities Act and Section 10(b) of the Exchange Act was 5.4% of the plaintiffs' maximum damages. (Tr., ECF No. 82, at 14:16–23; Mem. in Supp. of Mot. for Final Approval, ECF No. 76-1, at 15.)[13]

Based on the substantial litigation risks discussed above, and because the settlement here was reached with the assistance of an experienced mediator, the Court concludes that the settlement amount is within a reasonable range. *See Lea*, 2021 WL 5578665, at *10 (approving settlement amount constituting 5.3% of the maximum estimated damages); *In re China Sunergy Sec. Litig.*, No. 07-CV-7895 (DAB), 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting that average settlement amounts in securities fraud class actions can range from 3% to 7%); *see also Mikhlin*, 2021 WL 1259559, at *9 (observing that "[c]ourts in this Circuit commonly find that settlements for less than half of potential damages are within the range of reasonableness"); *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 270 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair.").

---

[13] Plaintiffs cite to a report by Cornerstone Research as the source for this figure. (*See* Mem. in Supp. of Mot. for Final Approval, ECF No. 76-1, at 15, *id.* at 15 n.3 (citing Cornerstone Research, *Securities Class Action Settlements 2020 Review and Analysis* (2021), https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis.) Based on this research, Plaintiffs' counsel further asserted at the Fairness Hearing that between 2011 and 2020, "cases with damages between 75 to 149 million [dollars] . . . settle[d] for an average of 4.9% of damages[.]" (Tr., ECF No. 82, at 15:2–5.)

3.  Allocation of Settlement Fund

The method of distributing relief and processing class member claims also supports approving the settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). Like the settlement agreement itself, the plan of allocation "must also be fair and reasonable." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. at 316; *see also In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013) ("When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis."). Furthermore, a proposed claims processing method "should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 40 (citing Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment).

Here, the method for processing settlement class members' claims and distributing the net settlement fund to eligible claimants includes well-established, effective procedures, and was developed with the assistance of a financial consultant. (Mem. in Supp. of Mot. for Final Approval, ECF No. 76-1, at 17–18; Joint Decl., ECF No. 78, ¶ 74; Tr., ECF No. 82, at 16:8–12.) A.B. Data will process the claims under Plaintiffs' counsel's guidance, allow claimants an opportunity to cure any purported deficiencies or request that the Court review their claim denial, and, if approved, mail authorized claimants their *pro rata* share of the net settlement fund. (Mem. in Supp. of Mot. for Final Approval, ECF No. 76-1, at 17–18; *see also supra* note 6; Notice, attached as Ex. A to Straub Decl., ECF No. 78-1, at 5–8; Tr., ECF No. 82, at 16:13–18 (explaining that the claims administrator will calculate "how much a settlement class member would get . . . based upon how much [P]laintiffs believe the stock was inflated during the time that the class member purchased their PPDAI shares"); *id.* at 17:16–19.) This methodology is appropriate and consistent with many other securities class action

settlements' plans of allocation, and treats class members equitably relative to each other. *See Lea*, 2021 WL 5578665, at *11; *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. at 317; Fed. R. Civ. P. 23(e)(2)(D).

 4.  Identification of Other Agreements

Federal Rule of Civil Procedure 23(e) requires the Court to take into account "any agreement made in connection with" the proposed settlement. Fed. R. Civ. P. 23(e)(3), (e)(2)(C)(iv). The parties disclosed that they have entered into a confidential supplemental agreement establishing conditions under which Defendants may terminate the settlement if a certain threshold of opt-outs is reached. (*See* Settl. Agr., ECF No. 64, at 32 ¶ 10.3; Mem. in Supp. of Mot. for Final Approval, ECF No. 76-1, at 16.) As Plaintiffs explain, the terms of the supplemental agreement are kept confidential "to avoid creating incentives for a small group of investors to opt out solely to leverage the threshold to exact an individual settlement." (Mem. in Supp. of Mot. for Final Approval, ECF No. 76-1, at 16.) Given the specific function of this separate agreement, it does not appear to bear upon the overall fairness of the settlement agreement itself. *See Mikhlin*, 2021 WL 1259559, at *8 (finding that "the general contours of the supplemental agreement are not incompatible with class members' receipt of adequate relief" because "in the event that Defendants' termination right is activated, and that Defendants exercise such right, Plaintiffs would be still be in a position to pursue relief through litigation"); *see also Christine Asia Co. v. Yun Ma*, No. 15-MD-2631 (CM) (SDA), 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) ("This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement."). Accordingly, the Court finds that the supplemental agreement does not pose an impediment to approval of the settlement agreement.

### C.  Attorneys' Fees and Costs & Plaintiff Awards

Rule 23(e)(2)(C)(iii) also requires consideration of "the terms of any proposed award of attorney's fees." Fed. R. Civ. P. 23(e)(2)(C)(iii). Counsel for the federal and state court Plaintiffs in this case seek an attorneys' fee award of 33.33% of the settlement amount and $69,681 in costs, as well as $8,000 total in an award for four named Plaintiffs. (Joint Decl., ECF No. 78, ¶¶ 7, 75–79; *see also* Tr., ECF No. 82, at 18:20–19:14.) Counsel argue that these amounts are warranted based upon the risks involved in the litigation, the quality of counsel, and the fees granted in similar securities class action litigations. (*See generally* Mem. in Supp. of Mot. for Fees and Award, ECF No. 77-1; *see also* Joint Decl., ECF No. 78, ¶ 78.) Having reviewed the documents submitted by class counsel in support of their requests, including attorney declarations, billing records, and invoice summaries for the claimed costs, the Court finds that fees totaling 33.33% of the settlement amount, $69,681 in costs, and an award of $2,000 to each of the four Plaintiffs to be reasonable, and therefore approves the requested fees, costs, and awards.[14]

---

[14] Federal Rule of Civil Procedure 23(e)(2)(C)(iii) also requires courts to consider the "timing of payment" for "any proposed award of attorney's fees." Fed. R. Civ. P. 23(e)(2)(C)(iii). Here, the parties' settlement agreement calls for "[a]ttorneys' fees, expenses, and interest" to "be paid from the Settlement Fund to Plaintiffs' Counsel immediately upon entry by the Federal Court of an order awarding such amounts, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof." (*See* Settl. Agr., ECF No. 64, at 24 ¶ 5.1.) Plaintiffs' counsel argue that "[s]uch 'provisions are common.'" (Mem. in Supp. of Mot. for Final Approval, ECF No. 76-1, at 16 (quoting *Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016)).) While courts in this circuit have found "quick-pay" provisions like this one to be objectionable in certain cases, *see, e.g.*, *Hart v. BHH, LLC*, 334 F.R.D. 74, 77 (S.D.N.Y. 2020), the Court does not find such an arrangement to be problematic here because (1) the claims administrator is tasked with distributing the fund to approved claimants, not counsel; and (2) the Court will retain jurisdiction over any disputes arising out of the administration of the settlement fund. (*See* Settl. Agr., ECF No. 64, at 27, ¶ 7.3; *id.* at 29–30 ¶¶ 7.10, 11). Accordingly, while the timing of the award of attorneys' fees does not necessarily "bolster the case for . . . approval, it also does not undercut th[e] case where, as here, the majority of other factors weigh significantly in its favor." *Mikhlin*, 2021 WL 1259559, at *7.

1.  <u>Attorneys' Fees</u>

When determining appropriate counsel fees in class actions, courts generally use the lodestar method or award fees based on a percentage of the settlement fund. *In re Parking Heaters, Antitrust Litig.*, 15-MC-940 (DLI) (JO), 2019 WL 8137325, at *6 (E.D.N.Y. Aug. 15, 2019) (citing *Goldberger*, 209 F.3d at 47), *report and recommendation adopted*, No. 15-MC-940 (DLI) (JO) (E.D.N.Y. Sept. 30, 2019). The "lodestar method" multiplies a reasonable number of hours spent on the case by a reasonable hourly rate, whereas the "common fund method" calculates the fee amount as a percentage of the total award. *Id.* (citing *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417–22 (2d Cir. 2010)). Courts using the percentage-of-the-fund method, which is the "trend in this Circuit," will also "cross-check the percentage fee against counsel's 'lodestar' amount of hourly rate multiplied by hours spent." *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *9 (citing *Wal-Mart Stores*, 396 F.3d at 121; *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011)). Under either method, courts will also consider the following *Goldberger* factors: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *In re Grana y Montero S.A.A. Sec. Litig.*, 2021 WL 4173684, at *16 (citing *Goldberger*, 209 F.3d at 50); *see also Burns*, 2014 WL 12917621, at *8 (same).

As discussed, counsel for the consolidated and federal and state court actions seek one-third of the settlement fund, or $3,000,000. (Joint Decl., ECF No. 78, ¶ 75; Tr., ECF No. 82, at 18:20–24.) Counsel represent that this amount constitutes approximately 75% of their aggregate lodestar amount, which is $3,973,272.25 billed for 5,099.2 hours

28

worked.[15] (Joint Decl., ECF No. 78, ¶ 76.) Analyzing this requested award against the *Goldberger* factors and cross-checking it against the lodestar both favor approval of the claimed fees.

> a)  Goldberger *Factors*

First, the time and labor expended by class counsel in this case is reasonable considering that the litigation has been proceeding for more than three years in federal and state court, involved a significant investigation into a foreign-based company, required litigating multiple motions to dismiss, and included extensive settlement negotiations with the assistance of a professional mediator. (*See* Mem. in Supp. of Mot. for Fees and Award, ECF No. 77-1, at 8–9; Joint Decl., ECF No. 78, ¶¶ 76–78.) Moreover, the claimed time is supported by Plaintiffs' counsel's respective declarations and corresponding billing records, as discussed *supra* note 15.

Second, this case involves complex questions concerning liability and damages that would have required the introduction of difficult to obtain documentary and deposition evidence, as well as significant reliance on experts. (*See* Mem. in Supp. of Mot. for Fees and Award, ECF No. 77-1, at 12–13; Mem. in Supp. of Mot. for Final Approval, ECF No. 76-1, at 6–8, 11–13; Tr., ECF No. 82, at 12:1–24); *see also In re Parking*

---

[15] Plaintiffs' counsel's aggregate lodestar is calculated by totaling: (1) $409,370 in fees for 561.55 hours worked by The Rosen Law Firm, P.A. in the consolidated federal action (*see* Decl. of Laurence Rosen ("Rosen Decl."), ECF No. 78-2, ¶ 5; Rosen Lodestar Chart, attached as Ex. 1 to Rosen Decl.); (2) $1,841,155.50 in fees for 2,345.8 hours worked by Robbins Geller Rudman & Dowd LLP in the State Court Action (*see* Declaration of Joseph Russello ("Russello Decl."), ECF No. 78-3, ¶ 7; Robbins Geller Lodestar Chart, attached as Ex. 1 to Russello Decl.); (3) $1,412,318 in fees for 1,714.1 hours worked by Scott+Scott Attorneys at Law LLP in the State Court Action (*see* Declaration of Daryl F. Scott ("Scott Decl."), ECF No. 78-4, ¶ 5; Scott+Scott Lodestar Chart, attached as Ex. 1 to Scott Decl.); (4) $75,758.75 in fees for 142.25 hours worked by Robbins LLP in the State Court Action (*see* Oddo Decl., ECF No. 78-5, ¶ 4; Robbins LLP Lodestar Chart, attached as Ex. 1 to Oddo Decl.); and (5) $234,850 in fees for 335.5 hours worked by Hedin Hall LLP in the State Court Action (*see* Hall Decl., ECF No. 78-6, ¶ 6; Hedin Hall Lodestar Chart, attached as Ex. 1 to Hall Decl.).

*Heaters, Antitrust Litig.*, 2019 WL 8137325, at *7 (recognizing that "class actions like these are complex, expensive, and lengthy").

Third, the risk of litigation, which is "often cited as the first, and most important, *Goldberger* factor," weighs in favor of approving the requested fee, as "[c]lass counsel undertook this litigation on a contingent basis and have received no payment for their work during the roughly three years that the case has remained pending . . . ." *Lea*, 2021 WL 5578665, at *12 (citing *Goldberger*, 209 F.3d at 54; *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d at 361). Indeed, Plaintiffs' counsel note that they accounted for the risks associated with "embarking on a complex, expensive, and likely lengthy litigation with no guarantee of being compensated for the substantial investment of time and money the case would require." (Joint Decl., ECF No. 78, ¶ 78; *see also* Mem. in Supp. of Mot. for Fees and Award, ECF No. 77-1, at 10–11.)

Fourth, as noted above, lead counsel in the federal and state court actions possess substantial experience litigating complex securities class action cases and have provided quality representation to Plaintiffs and the putative class by, among other things, successfully negotiating a global settlement. (*See, e.g.*, Rosen Law Resume, ECF No. 8-4; Robins Geller Rudman & Down LLP Resume, ECF No. 78-3; Scott+Scott Resume, ECF No. 78-4; *see also* Mem. in Supp. of Mot. for Fees and Award, ECF No. 77-1, at 14–15.)

Fifth, the requested one-third fee in relation to the settlement is unopposed and constitutes a proportion routinely approved as reasonable. *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d at 445 ("[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million . . . ."); *see also Burns*, 2014 WL 12917621, at *10.

Finally, public policy considerations also favor approval of the requested fee amount. In addition to obtaining relief for investors alleging violations of securities

laws, "[c]ourts in this Circuit have recognized the importance of private enforcement actions and the corresponding need to incentivize attorneys to pursue such actions on a contingency fee basis." *In re Grana y Montero S.A.A. Sec. Litig.*, 2021 WL 4173684, at *18 (citing *In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515–16 (S.D.N.Y. 2009)).

      b)  *Lodestar Cross-Check*

The requested fees are also reasonable under the lodestar method. The five law firms comprising class counsel represent that they have spent 5,099.2 total hours litigating this case, producing an aggregate lodestar amount of $3,973,272.25 when multiplied by counsel's hourly billing rates. (Joint Decl., ECF No. 78, ¶ 76; Mem. in Supp. of Mot. for Fees and Award, ECF No. 77-1, at 7; *see also supra* note 15.) This results in a negative lodestar multiplier of 0.755, which is "well below the parameters used throughout district courts in the Second Circuit, [and] affords additional evidence that the requested fee is reasonable." *City of Providence v. Aeropostale, Inc.*, No. 11-CV-7132 (CM) (GWG), 2014 WL 1883494, at *13 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) (summary order).

The Court notes, however, that Plaintiffs' counsel's billing records reflect hourly rates that exceed those normally approved in this district.[16] *See, e.g., Bennett v. Asset Recovery Sols., LLC*, No. 14-CV-4433 (DRH) (SIL), 2017 WL 432892, at *7 (E.D.N.Y. Jan. 5, 2017) (finding that courts in the Eastern District "regularly approve hourly rates ranging from $200 to $450 per hour for partners, $100 to $300 per hour for associates,

---

[16] For example, The Rosen Law Firm, P.A. lists an hourly rate ranging from $625 for associates to $995 for partners (*see* Rosen Lodestar Chart, ECF No. 78-2), and Robbins Geller Rudman & Dowd LLP lists hourly rates ranging from $375 for associates to $1,325 for partners (*see* Robbins Geller Lodestar Chart, ECF No. 78-3). The other counsel's hourly rates cover ranges similar to these firms. (*See* Scott+Scott Lodestar Chart, ECF No. 78-4; Robbins LLP Lodestar Chart, ECF No. 78-5; Hedin Hall Lodestar Chart, ECF No. 78-6.)

and $70 to $100 per hour for paralegals"), *report and recommendation adopted*, No. 14-CV-4433 (DRH) (SIL), 2017 WL 421920 (E.D.N.Y. Jan. 31, 2017). However, even applying reduced hourly rates, a reasonable aggregate lodestar is $1,966,512.50,[17] which would produce a lodestar multiplier of 1.53 relative to the requested fee amount.

Even at this reduced amount, the multiplier "is below what has been deemed reasonable for the common fund settlements in securities class action cases in this circuit." *In re Grana y Montero S.A.A. Sec. Litig.*, 2021 WL 4173684, at *18 (citing *Athale v. Sinotech Energy Ltd.*, No. 11-CV-5831 (AJN), 2013 WL 11310686, at *8 (S.D.N.Y. Sept. 4, 2013); *Carlson v. Xerox Corp.*, 355 F. App'x 523, 526 (2d Cir. 2009) (summary order)). Moreover, counsel will expend additional time on this litigation following the adjudication of these motions, which will increase any lodestar calculations. (*See* Joint Decl., ECF No. 78, ¶ 78 n.6 (noting that "Plaintiffs' Counsel will spend more time and resources . . . assisting Settlement Class Members with claims filing, overseeing the claims process and distribution of the Net Settlement Fund to Settlement Class Members, as well as responding to Settlement Class Members' inquiries").)

Accordingly, the lodestar cross-check also favors approval of the uncontested amount of fees awarded in the settlement.

*   *   *   *   *

In light of the foregoing, Plaintiffs' counsel's request for attorneys' fees in the amount of one-third of the settlement fund is approved.

---

[17] The Court calculated this reduced lodestar by multiplying counsel's hours spent on the litigation by the hourly rates generally found reasonable in this district, i.e., $450 for partners, $200 to $300 for associates, and $100 for paralegals and litigation support staff.

2. Attorneys' Expenses

"The Court may award counsel reasonable out-of-pocket expenses that were necessary to successfully litigate and resolve the action." *Burns*, 2014 WL 12917621, at *11 (citing *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d at 363–64; *In re Glob. Crossing Sec. and ERISA Litig.*, 225 F.R.D. at 468). Plaintiffs' counsel request reimbursement for $69,681 in expenses incurred while prosecuting this action.[18] (*See* Joint Decl., ECF No. 78, ¶ 77; Mem. in Supp. of Mot. for Fees and Award, ECF No. 77-1, at 16–17.) Counsel state that "[m]ost of these expenses were for outside investigators, financial consultants, and the mediator — all of which were essential to the successful resolution of the Actions." (Joint Decl., ECF No. 78, ¶ 77; *see also, e.g.*, Rosen Expense Chart, attached as Ex. 2 to Rosen Decl., ECF No. 78-2 (listing more than $22,000 in expenses for experts, investigators, mediation, and notice to class members); Robbins Geller Expense Chart, attached as Ex. 2 to Russello Decl., ECF No. 78-3 (listing $7,594.65 in expenses for financial consultants and translation services).)

Having reviewed counsel's expense charts, *see supra* note 18, and given that the Notice distributed to potential class members anticipated up to $110,000 in litigation expenses (*see* Notice, attached as Ex. A to Straub Decl., ECF No. 78-1, at 2), the Court finds the claimed costs were, on the whole, reasonably expended and should be

---

[18] The $69,681 in costs is comprised of: (1) $26,225.29 in expenses by The Rosen Law Firm, P.A. in the consolidated federal action (*see* Rosen Decl., ECF No. 78-2, ¶ 6; Rosen Expense Chart, attached as Ex. 2 to Rosen Decl.); (2) $18,918.69 in expenses by Robbins Geller Rudman & Dowd LLP in the State Court Action (*see* Russello Decl., ECF No. 78-3, ¶ 8; Robbins Geller Expense Chart, attached as Ex. 2 to Russello Decl.); (3) $21,681.92 in expenses by Scott+Scott Attorneys at Law LLP in the State Court Action (*see* Scott Decl., ECF No. 78-4, ¶ 6; Scott+Scott Expense Chart, attached as Ex. 2 to Scott Decl.); (4) $665.10 in expenses by Robbins LLP in the State Court Action (*see* Oddo Decl., ECF No. 78-5, ¶¶ 5–6; Robbins LLP Expense Chart, attached as Ex. 2 to Oddo Decl.); and (5) $2,200 in expenses by Hedin Hall LLP in the State Court Action (*see* Hall Decl., ECF No. 78-6, ¶ 7; Hedin Hall Expense Chart, attached as Ex. 2 to Hall Decl.).

reimbursed. Accordingly, the request for an award of attorneys' expenses in the amount of $69,681 is approved.

### 3.  Plaintiffs' Awards

"Incentive awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *In re Parking Heaters, Antitrust Litig.*, 2019 WL 8137325, at \*8 (quotation marks omitted); *see also Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 101 (E.D.N.Y. 2015) (same).

Here, Plaintiffs seek an award of $2,000 each for federal Plaintiffs Golden Section and Weichen Lai, and state court Plaintiffs Ravindra Vora and Yizhong Huang, totaling $8,000, in connection with their representation of the settlement class. (*See* Joint Decl., ECF No. 78, ¶¶ 79–80; *see also* Mem. in Supp. of Mot. for Fees and Award, ECF No. 77-1, at 17–18.) Each of these four Plaintiffs submitted declarations detailing their efforts in this action over the past three years. (*See generally* Declaration of Jin Xin on Behalf of Golden Section, ECF No. 78-7; Declaration of Weichen Lai, ECF No. 78-8; Declaration of Ravindra Yora, ECF No. 78-9; Declaration of Yizhong Huang, ECF No. 78-10.) The incentive awards requested in this case are quite modest compared to others awarded in the Second Circuit. *See, e.g., Lea*, 2021 WL 5578665, at \*13 (awarding $7,500 each to two lead plaintiffs); *Kindle v. Dejana*, 308 F. Supp. 3d 698, 718 (E.D.N.Y. 2018) (approving award of $10,000 to a named plaintiff). Accordingly, the Court approves the application for an incentive award of $2,000 each for Plaintiffs Golden Section, Weichen Lai, Ravindra Vora, and Yizhong Huang.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' motions for final settlement approval (ECF No. 76) and for attorneys' fees and award to Plaintiffs (ECF No. 77).

**SO ORDERED.**

Dated:   Brooklyn, New York
         January 21, 2022

*Taryn A. Merkl*
_____
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE